```
 1                   UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF TEXAS
 2                        LUBBOCK DIVISION

 3
    UNITED STATES OF AMERICA        )    NO. 5:11-CR-015-C
 4                                  )
    VS.                             )    AMARILLO, TEXAS
 5                                  )
    KHALID ALI-M ALDAWSARI          )    JUNE 21, 2012
 6

 7

 8       --------------------------------------------------------

 9                        TRANSCRIPT OF TRIAL
              BEFORE THE HONORABLE DONALD E. WALTER,
10            UNITED STATES DISTRICT JUDGE, AND A JURY.

11                            VOLUME 1

12       --------------------------------------------------------

13

14

15

16

17

18

19

20

21

22

23  OFFICIAL COURT REPORTER:  MECHELLE DANIEL, 1205 TEXAS AVENUE,
    LUBBOCK, TEXAS 79401, (806) 744-7667.
24
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT
25  PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

1                          **A P P E A R A N C E S**

2    **FOR THE GOVERNMENT:**
     UNITED STATES ATTORNEY'S OFFICE
3    1205 TEXAS AVENUE, SUITE 700
     LUBBOCK, TEXAS 79401
4    BY:  JEFFREY R. HAAG
          DENISE B. WILLIAMS
5

6    U.S. DEPARTMENT OF JUSTICE
     NATIONAL SECURITY DIVISION
7    950 PENNSYLVANIA AVENUE, N.W.
     WASHINGTON, DC 20530
8    BY:  DAVID P. CORA

9
     UNITED STATES ATTORNEY'S OFFICE
10   BURNETT PLAZA, SUITE 1700
     801 CHERRY STREET, UNIT 4
11   FORT WORTH, TEXAS 76102
     BY:  MATTHEW KACSMARYK
12

13   UNITED STATES ATTORNEY'S OFFICE
     1100 COMMERCE STREET, SUITE 300
14   DALLAS, TEXAS 79242
     BY:  JAMES T. JACKS
15

16   **FOR THE DEFENDANT:**
     COGDELL LAW FIRM LLC
17   ATTORNEYS AT LAW
     1401 McKINNEY STREET, SUITE 1625
18   HOUSTON, TEXAS 77010
     BY:  DAN COGDELL
19        DENNIS HESTER

20
     PAUL DOYLE & ASSOCIATES
21   ATTORNEYS AT LAW
     600 TRAVIS, SUITE 4700
22   HOUSTON, TEXAS 77002
     BY:  PAUL H. DOYLE
23

24                              *  *  *  *  *

25

1                                    **INDEX**
                                   **VOLUME 1**
2

3    VOIR-DIRE EXAMINATION BY THE COURT                         9
     VOIR-DIRE EXAMINATION BY THE GOVERNMENT                   89
4    VOIR-DIRE EXAMINATION BY THE DEFENSE                      100

5

6

7

8

9                            *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2                THE COURT:  The defendant is not here yet.  We're

3    going to pick--we'll pick the jury.  They will be all seated

4    out there.  Yes, you--get close to the microphone.  I do ask

5    that you use the microphone, but, of course--I guess you can

6    stand this side of the--but you need notes.  However you're

7    most comfortable during your voir dire.

8                MR. COGDELL:  I don't know that I'm ever most

9    comfortable.

10               THE COURT:  Do you want to be on this side?

11               MR. COGDELL:  Yes, sir, I think--I suppose so.  I

12   may be using some visuals for voir dire, so--

13               THE COURT:  Visuals for voir dire?

14               MR. COGDELL:  Yes, sir.

15               THE COURT:  I'll watch, but I doubt it.

16               MR. COGDELL:  Fair enough.

17               THE COURT:  Okay.

18               MR. COGDELL:  You are aware, of course, Judge, that

19   Mr. Aldawsari is not yet in the courtroom.

20               THE COURT:  I know.

21               Anything--  Here's what I think we're going to do,

22   depending on how fast we can pick the jury.  If it takes very

23   long, we won't begin the trial until tomorrow morning, but we

24   will use the afternoon to go through some motions that are

25   before me right now--

1          MR. COGDELL:  Yes, sir.

2          THE COURT:  --to discuss those and to whether--

3    whether they're going to be admissible or not admissible and

4    get ourself in order to start tomorrow morning.  But everything

5    depends on how we how fast we pick the jury.

6          MR. COGDELL:  Yes, sir.

7          THE COURT:  You know, I've said we're going to get

8    sixteen.  Do we really need sixteen?

9          MR. COGDELL:  I don't think so, Judge.

10         THE COURT:  Fourteen ought to do.

11         MR. COGDELL:  I just don't see this going longer

12   than ten days, max.  Probably less than that.

13         THE COURT:  I see it going about five, but--

14         MR. COGDELL:  Fair enough.

15         MR. HAAG:  I believe so, Your Honor.  I think that

16   even if we start Friday morning, we can finish by the end of

17   next week.

18         THE COURT:  We'll just do fourteen.

19         MR. COGDELL:  A couple of questions, Judge.

20         THE COURT:  Yes, sir.

21         MR. COGDELL:  I have Jonathan Leach, who is our jury

22   consultant in the room.  Mr. Leach, would you stand?

23         Where would you like Mr. Leach?

24         THE COURT:  Where would you like him to sit?

25         MR. COGDELL:  Right back there will be great.

1              THE COURT:  That will be fine.

2              MR. COGDELL:  The other fellow I have is a

3    nontestifying expert, Danny Coulson, former deputy director of

4    the FBI who's kind of assisting us with an overview.  He's not

5    testifying.  May he remain?

6              THE COURT:  Okay.  All right.  I assume we're going

7    to invoke the rule of sequestration.

8              MR. HAAG:  Yes, Your Honor.

9              MR. COGDELL:  Yes, sir.

10             THE COURT:  It is my custom, rather than bringing

11   them all in and swearing them and all that, to make each lawyer

12   responsible for making sure that their witnesses obey the rule.

13   Is that acceptable to you--

14             MR. HAAG:  Yes, Your Honor, it is.

15             THE COURT:  --Mr. Haag?

16             MR. COGDELL:  It is.

17             THE COURT:  Mr. Cogdell?

18             MR. COGDELL:  Yes, sir.

19             THE COURT:  All right.  That's what we will do then.

20             Well, as soon as we get the defendant in--  I don't

21   know; can we go ahead and seat the jury?

22             COURTROOM DEPUTY:  Let me check with the jury clerk.

23             THE COURT:  Okay.

24             MR. DOYLE:  If we could, Judge, we haven't had a

25   chance to see him, and we had an issue of making sure he was--

1                    THE COURT:  Oh, okay.

2                    MR. DOYLE:  --he was clean shaven and--

3                    THE COURT:  Okay.  We'll hold off.

4                    COURT SECURITY OFFICER:  Your Honor, the jury is

5     still coming in at this time.

6                    THE COURT:  Oh, okay.

7                    All right.  I'll do the formality.  Is the

8     government ready?

9                    MR. HAAG:  The United States is ready, Your Honor.

10                   THE COURT:  Defense ready?

11                   MR. COGDELL:  Defense is ready, Your Honor.

12                   THE COURT:  Okay.

13                   MR. COGDELL:  Where is the--is--just so we don't

14    bump into them inadvertently, where is the jury going to be

15    kept during the--they'll go to the jury room, but do they hang

16    out downstairs?  What's the court's--

17                   COURT SECURITY OFFICER:  Sir, the jury room is

18    behind that door.

19                   THE COURT:  And that's--once it's picked, that's

20    where I'm going to ask them to stay.

21                   MR. COGDELL:  Yes, sir.  Fine.

22         (PAUSE)

23                   MR. COGDELL:  One other housekeeping matter, Your

24    Honor, if I may.

25                   THE COURT:  Yes.

 1          MR. COGDELL:  Patton Boggs is now sort of the

 2   supervisory firm over our efforts, if you will, and one of the

 3   partners, Cass Weiland, is here.  He's not going to have a

 4   speaking role.  He's, I think, going to be in and out to

 5   observe.  He doesn't need to be inside the rail because he's

 6   not going to have a speaking role--

 7          THE COURT:  If he's a member of the bar, he can sit

 8   inside the rail if he wants to.

 9          MR. COGDELL:  Okay.  Fair enough.  Thank you, Judge.

10      (PAUSE)

11          THE COURT:  While we're sitting and waiting, here's

12   what I want y'all to be thinking about and here's what we're

13   going to discuss after the jury is picked.  I think that the

14   government's case will be limited to evidence relevant to these

15   issues:  First, that the defendant knowingly attempted to use a

16   weapon of mass destruction; second, that he attempted to use it

17   against a person or property in the U.S. and that mail or

18   interstate facilities were used; and three, that the defendant

19   intended to commit the offense and did a substantial step

20   toward the commission of the offense.

21          I think that's all that needs to come in on the

22   government's case-in-chief.  There may be some stuff--other

23   matters may become relevant during rebuttal, depending on what

24   the defendant does.  So be thinking about that and trying to

25   argue me out of it if you want to.

1              MR. COGDELL:  I'm with the court.  I think that's

2    where we're going.  I think that's where we are.

3              THE COURT:  Oh, let me check with you, Mr. Cogdell.

4    I gather that the insanity defense is out now?

5              MR. COGDELL:  It is.

6              THE COURT:  Brown will not testify?

7              MR. COGDELL:  Brown will not testify at these

8    proceedings.  We may see him later on.

9              THE COURT:  I understand.

10             We'll talk about the rest of it later.  Okay.

11   (BRIEF RECESS TAKEN)

12   (THE PANEL MEMBERS ARE SEATED IN THE COURTROOM)

13             THE COURT:  Good morning.  You may be seated.

14             Good morning, ladies and gentlemen.  We appreciate

15   you coming in here today.  I understand you're not here

16   entirely voluntarily.  Some of you would probably rather be

17   someplace else.  We understand that.  Believe me, we would not

18   so disrupt your lives except on a matter of a most serious

19   nature, a criminal trial here in the United States District

20   Court for the Northern District of Texas.

21             I know that some of you are apprehensive about being

22   here.  We understand that too.  I assure you, all of us--the

23   court personnel, the lawyers, and I will do everything we can

24   to minimize the inconvenience to you and to take as little of

25   your time as is possible.  But it is a serious matter that

1    we're concerned with today, so please give us your patience,

2    attention, and indulgence.

3            Let me introduce myself.  My name is Donald Walter.

4    The courtroom deputy clerk seated here, who will swear in the

5    witnesses and keep track of the exhibits, keep things running

6    smoothly, is Elodia Brito.  Mechelle Daniel to my right is the

7    court reporter.  She takes down everything that we say, and she

8    asks only that we speak up so that she can hear and understand

9    us.

10           My law clerks to my left are Melanie Wise and

11   Caroline Gardner.  Melanie went to school at--law school at the

12   University of Arkansas, and Caroline attended Louisiana State

13   University.  They help me with questions of law and procedures.

14           Twelve of you will ultimately be selected to serve

15   as jurors to decide the case that we're considering today.

16   Actually we're going to select fourteen to hear the case, and

17   then just before you go to the jury room to deliberate, we will

18   select the two alternates and allow them to leave.  The

19   remaining twelve will deliberate and decide the case.

20           We're going to begin the process of picking the

21   jury.  It's known as the voir dire.  It's--  Lawyers want to

22   listen to you, and I want to talk to you and ask you some

23   questions.  It's part of how we get fair trials.  Different

24   people have different views of things, and some are more able

25   to make a fair and impartial judgment about a particular topic

1    than others, and a lot of reasons for that.  None of them are

2    bad or embarrassing.  What we do in life, the type of work we

3    do, all those things color, in great and small ways, our

4    ability to decide something.

5          What we want to do in this courtroom is to get the

6    defendant judged on the merits of his case and not by any

7    predispositions or opinions of jurors.  So with that in mind,

8    we're going to be asking you questions about yourselves.  Not

9    to pry; just to get to know you a little.  It's how we make

10   sure we have a jury that will try the case fairly.

11         We ask you to help by thinking about yourselves and

12   what your reactions to the case are and to the people involved.

13   If your response is strongly positive or negative about

14   something, let me know.  That's the right thing to do.

15   Sometimes the fairest and best thing that you can do is to

16   disqualify yourself even if you really want to serve.  But on

17   the other hand, if you're confident that you can be neutral,

18   you'll be making a very important contribution to our system of

19   laws by staying and serving.

20         I am convinced, after 27 years on the bench, that

21   twelve jurors make sense more often than we judges do.  I think

22   it's the finest thing that got left to us by the English

23   system.  But it depends on drawing from a broad cross-section

24   of the community.  It would not do to have all butchers and

25   bakers and candlestick makers.  What we want is a broad

1    cross-section of Americana.  So if you are thinking that you

2    don't want to be here, please don't judge so quickly.  Everyone

3    I have ever talked to, after serving on a jury, tells me that

4    it's one of the most satisfying things they have ever done.

5    It's one way to make a difference.  So please don't waste your

6    chance.

7              I have a favor to ask of you, and it's important.

8    Please do not talk to your fellow jurors--fellow prospective

9    jurors about this case or the procedures we're going through.

10             Now, if all of you would rise, raise your right

11   hand, and be sworn or affirmed.

12         (THE PANEL MEMBERS ARE SWORN)

13             THE COURT:  Have a seat, please.

14             As I said, this is a criminal case in which the

15   United States Government has brought a charge against the

16   defendant.  Both the government and the defendant have the

17   right to have this case tried by qualified, fair and impartial

18   jurors who are responsible and capable and who will, without

19   fear or favor, without bias, prejudice, or sympathy, hear and

20   decide the issues to be tried fairly and objectively, and who

21   will render a verdict based solely on the evidence admitted

22   during the course of trial and the law as I give it at the end

23   of the trial.

24             As I explained, a juror's qualifications may not be

25   assumed without inquiry, and that's the voir dire.  During it,

1    your qualifications and impartiality as prospective jurors will

2    be determined.  What we want to do is develop the whole truth

3    concerning the competency of each of you, your frame of mind,

4    and your ability to do your sworn duty in accordance with the

5    juror's oath.  Your answers to these questions will enable me

6    to determine whether any of you should be excused for cause,

7    and it will also allow counsel for the parties to make

8    intelligent use of peremptory challenges, that is, challenges

9    that the law gives without having to assign a particular

10   reason.

11           Please, your answers to my questions must be

12   complete, as well as truthful.  Each of you is under a

13   compulsion to disclose, upon a general question, any matter

14   that might tend to disqualify you for any reason from sitting

15   on the jury.  False or misleading answers might result in a

16   seating of a juror who might have been discharged by me or

17   stricken through the exercise of a peremptory challenge and

18   could result in a miscarriage of justice.  I'm going to be

19   asking you questions collectively, but please consider them as

20   if I am directing to them individually--to you individually.

21           This case comes by way of an indictment, and in that

22   indictment, the government has charged the defendant, Khalid

23   Ali-M Aldawsari, with attempted use of a weapon of mass

24   destruction.  The defendant has entered a plea of not guilty to

25   the charge in the indictment and has thereby raised issues of

1    fact to be tried by a jury of his peers.

2              During trial, everyone that you will need to be

3    hearing will be using a microphone and have their voices

4    amplified, as mine is now.  With that in mind, in the first row

5    on the left, if you can hear me, raise your hand.

6              Okay.  And the first row on the--  That's right.

7    It's backwards.

8              This row, first row, if you can hear me, raise your

9    hand.

10             Now, second row, if you can, raise your--up high so

11   I can see.  All right.

12             And second row here.  Okay.

13             And third row here.  Okay.

14             And third row over here.  All right.

15             Back when I was a young judge, I used to ask, if you

16   can't hear me, raise your hand.  And, of course, this lady

17   couldn't hear me, so she didn't raise her hand, and she got

18   picked as a juror and she sat for the whole trial, and only

19   when I was polling the jury did she say, "I haven't heard one

20   word," so we had to start all over again.  Anyway, okay.

21             If any of you cannot--if you cannot read, write,

22   speak, or understand the English language, raise your hand.

23             If any of you cannot see sufficiently well to see my

24   face, raise your hand.

25             If any of you have been convicted of a felony, that

1    is, a crime with a penalty greater than a year, in either state

2    or federal court and have not received a pardon, raise your

3    hand.

4            Okay.  The attorneys in this case can challenge your

5    becoming a member of the jury for several reasons; indeed, for

6    reasons not so easily explained.  So in order to intelligently

7    use those challenges, they need to know something about you.

8            So I'm going to start with Ms. Nicholson.  Yes, if

9    you'll hand her the--  Ms. Nicholson, tell us your name.

10           PANEL MEMBER:  Sarah Nicholson.

11           THE COURT:  And where do you live?

12           THE PANEL MEMBER:  In Amarillo.

13           THE COURT:  How long have you lived here, about?

14           THE PANEL MEMBER:  Seven years.

15           THE COURT:  Okay.  And who lives at home with you?

16           THE PANEL MEMBER:  My husband and my dogs and my

17   cat.

18           THE COURT:  How old is your daughter?

19           THE PANEL MEMBER:  My dogs are seven and eight.

20           THE COURT:  Oh, I thought you said daughter.

21           THE PANEL MEMBER:  No.

22           THE COURT:  Don't care about your dog.

23           THE PANEL MEMBER:  Okay.

24           THE COURT:  Is your husband employed?

25           THE PANEL MEMBER:  Yes.

1                    THE COURT:  Where?

2                    THE PANEL MEMBER:  At Auto Zone.

3                    THE COURT:  Where?

4                    THE PANEL MEMBER:  Auto Zone.

5                    THE COURT:  And what does he do there?

6                    THE PANEL MEMBER:  He's an assistant manager.

7                    THE COURT:  And are you employed outside the home?

8                    THE PANEL MEMBER:  Yes.

9                    THE COURT:  Where?

10                   THE PANEL MEMBER:  At Pampa Regional Medical Center.

11                   THE COURT:  What do you do there?

12                   THE PANEL MEMBER:  I'm a nurse.

13                   THE COURT:  And your educational level, please?

14                   THE PANEL MEMBER:  I have an associates in nursing.

15                   THE COURT:  Okay.  Thank you, ma'am.

16                   Somebody hand me a pen, please.  I seem to have left

17   my--  No, I have it.

18                   Mr. Sargent, your name, please?

19                   PANEL MEMBER:  Andrew Sargent.

20                   THE COURT:  From?

21                   THE PANEL MEMBER:  Canyon.

22                   THE COURT:  How long in Canyon?

23                   THE PANEL MEMBER:  About eight years.

24                   THE COURT:  And who lives at home with you, sir?

25                   THE PANEL MEMBER:  My mom and my dad.

```
1                    THE COURT:  Are they employed?

2                    THE PANEL MEMBER:  Yes.

3                    THE COURT:  Where?

4                    THE PANEL MEMBER:  My mom works at the hospital and

5      my dad is a postman.

6                    THE COURT:  And are you employed?

7                    THE PANEL MEMBER:  Yes.

8                    THE COURT:  Where?

9                    THE PANEL MEMBER:  Love's Truck Stop.

10                   THE COURT:  What do you do there?

11                   THE PANEL MEMBER:  I'm a diesel clerk.

12                   THE COURT:  And your educational level?

13                   THE PANEL MEMBER:  High school and some college.

14                   THE COURT:  Thank you, sir.

15                   Ms. Victor, your name, please, ma'am?

16                   PANEL MEMBER:  Sarah Victor.

17                   THE COURT:  From?

18                   THE PANEL MEMBER:  Amarillo, Texas.

19                   THE COURT:  How long?

20                   THE PANEL MEMBER:  Twenty-one years.

21                   THE COURT:  And who lives at home with you?

22                   THE PANEL MEMBER:  My mother.

23                   THE COURT:  And is she employed?

24                   THE PANEL MEMBER:  Yes.

25                   THE COURT:  Where?
```

1                    THE PANEL MEMBER:  She is self-employed.  She cleans

2      houses.

3                    THE COURT:  As?  What does she do?

4                    THE PANEL MEMBER:  She cleans houses.

5                    THE COURT:  And are you employed?

6                    THE PANEL MEMBER:  Yes.

7                    THE COURT:  Where?

8                    THE PANEL MEMBER:  Wal-Mart.

9                    THE COURT:  And what do you do at Wal-Mart?

10                   THE PANEL MEMBER:  I am an overnight stocker.

11                   THE COURT:  And your educational level?

12                   THE PANEL MEMBER:  High school and some college.

13                   THE COURT:  Thank you, ma'am.

14                   Mr. McDonald, your name, please?

15                   PANEL MEMBER:  Kevin McDonald.

16                   THE COURT:  From?

17                   THE PANEL MEMBER:  Amarillo.

18                   THE COURT:  How long?

19                   THE PANEL MEMBER:  Well, we're here, moved around a

20     bit, but my wife and I have been here for the better part of

21     the last nineteen years.

22                   THE COURT:  Okay.  And who lives at home with you?

23                   THE PANEL MEMBER:  My wife and three--four children.

24                   THE COURT:  How old are they?

25                   THE PANEL MEMBER:  I am thirty-eight.

1                    THE COURT:  No, how old are they?

2                    THE PANEL MEMBER:  Oh, how old are they?  This is

3    going to be hard.  They start at seventeen, fifteen, thirteen,

4    and eleven.

5                    THE COURT:  None of them employed?  All in school?

6                    THE PANEL MEMBER:  All in school, yes, sir.

7                    THE COURT:  And you, sir, are you employed?

8                    THE PANEL MEMBER:  Yes, sir.

9                    THE COURT:  Where?

10                   THE PANEL MEMBER:  EnergyNet.com, Inc., here in

11   Amarillo.

12                   THE COURT:  And what do you do?

13                   THE PANEL MEMBER:  I am a web developer, project

14   manager, presentation creator, document writer, graphics.

15                   THE COURT:  Okay.  You know, I find it funny,

16   fathers can never name the ages of their children; mothers

17   always can.  Oh, well.

18                   And your wife, is she employed outside the home?

19                   THE PANEL MEMBER:  Yes, sir.  She is the--

20                   THE COURT:  Where?

21                   THE PANEL MEMBER:  She works for Audio-Video

22   Corporation as an accountant.

23                   THE COURT:  And your educational level?

24                   THE PANEL MEMBER:  Associates degree and some--a

25   little bit of college beyond that.

1                THE COURT:  Thank you, sir.

2                THE PANEL MEMBER:  Thank you.

3                THE COURT:  Ms. Barrett, your name, please, ma'am?

4                PANEL MEMBER:  Pamela Barrett.

5                THE COURT:  From?

6                THE PANEL MEMBER:  Amarillo, Texas.

7                THE COURT:  How long in Amarillo?

8                THE PANEL MEMBER:  Twenty-one years.

9                THE COURT:  And who lives at home with you?

10                THE PANEL MEMBER:  My husband, a 13-year-old,

11  16-year-old, now the 21-year-old at college.

12                THE COURT:  21-year-old is in college?

13                THE PANEL MEMBER:  Thirteen more hours.

14                THE COURT:  Okay.  And is your husband employed?

15                THE PANEL MEMBER:  Yes, he is.

16                THE COURT:  Where?

17                THE PANEL MEMBER:  He is a high school principal

18  here in town.

19                THE COURT:  Okay.  And are you employed outside the

20  home?

21                THE PANEL MEMBER:  Yes, I am.  I'm a high school

22  librarian here in town.

23                THE COURT:  And your educational level?

24                THE PANEL MEMBER:  BS in business, English

25  education, MLS in--that's master's of library science.

1                    THE COURT:  Okay.  Thank you, ma'am.

2                    Mr. Fatheree?  Am I pronouncing that correctly?

3                    PANEL MEMBER:  Fatheree.

4                    THE COURT:  Mr. Fatheree, your name, please?

5                    THE PANEL MEMBER:  Timothy Hobart Fatheree.

6                    THE COURT:  From?

7                    THE PANEL MEMBER:  Pampa, Texas.

8                    THE COURT:  How long?

9                    THE PANEL MEMBER:  Basically my whole life.

10                   THE COURT:  And who lives at home with you, sir?

11                   THE PANEL MEMBER:  My wife and my dog.

12                   THE COURT:  How old is your daughter?

13                   THE PANEL MEMBER:  Dog.

14                   THE COURT:  I'm not hearing very well, and I'm

15   sorry.  Okay.  Is your wife employed outside the home?

16                   THE PANEL MEMBER:  Yes.

17                   THE COURT:  Where?

18                   THE PANEL MEMBER:  She works for our business.

19                   She works at our business.

20                   THE COURT:  Okay.  And your business is?

21                   THE PANEL MEMBER:  Culligan Water.

22                   THE COURT:  And what is--

23                   THE PANEL MEMBER:  Culligan Water.

24                   THE COURT:  Uh-huh.

25                   THE PANEL MEMBER:  "Hey, Culligan Man."

1                    THE COURT:  Oh, okay.  And your educational level,

2     sir?

3                    THE PANEL MEMBER:  High school and some college.

4                    THE COURT:  Thank you, sir.

5                    Ms. Godsey, your name, please?

6                    PANEL MEMBER:  Roberta Godsey.

7                    THE COURT:  From?

8                    THE PANEL MEMBER:  Stratford, Texas.

9                    THE COURT:  How long in Stratford?

10                   THE PANEL MEMBER:  Twenty-eight years.

11                   THE COURT:  And who lives at home with you?

12                   THE PANEL MEMBER:  My husband.

13                   THE COURT:  Is he employed?

14                   THE PANEL MEMBER:  Yes, he is.

15                   THE COURT:  Where?

16                   THE PANEL MEMBER:  He owns a business, a pilot car

17    service.

18                   THE COURT:  And are you employed outside the home?

19                   THE PANEL MEMBER:  Yes, I am.

20                   THE COURT:  Where?

21                   THE PANEL MEMBER:  Texas Department of Family and

22    Protective Services.

23                   THE COURT:  And what do you do there?

24                   THE PANEL MEMBER:  I'm a CPS investigator.

25                   THE COURT:  Okay.  Thank you.  Oh, your educational

1    level?

2                THE PANEL MEMBER:  Master's degree.

3                THE COURT:  Thank you, ma'am.

4                Mr. Alvarez, your name, please?

5                PANEL MEMBER:  Marcos Alvarez, Jr.

6                THE COURT:  From?

7                THE PANEL MEMBER:  Perryton, Texas.

8                THE COURT:  How long?

9                THE PANEL MEMBER:  Going on thirty years.

10               THE COURT:  And who lives at home with you, sir?

11               THE PANEL MEMBER:  My wife.

12               THE COURT:  And is she employed outside the home?

13               THE PANEL MEMBER:  Yes, sir.

14               THE COURT:  Where?

15               THE PANEL MEMBER:  At Weatherford Pump Units.

16               THE COURT:  What does she do there?

17               THE PANEL MEMBER:  She's a secretary.

18               THE COURT:  And you, sir, are you employed?

19               THE PANEL MEMBER:  Yes, sir.

20               THE COURT:  Where?

21               THE PANEL MEMBER:  I drive a truck for Mud Haulers,

22    Inc., out of Perryton.

23               THE COURT:  And your educational level?

24               THE PANEL MEMBER:  High school.

25               THE COURT:  Thank you, sir.

1                    Mr. Green, your name, please?

2                    PANEL MEMBER:  My name ain't Mr. Green.

3                    THE COURT:  From?  Wait, I'm sorry.  I'm sorry.  I

4     beg your pardon.  Mr. Martinez?

5                    THE PANEL MEMBER:  My name is Osvaldo Martinez.

6                    THE COURT:  From?

7                    THE PANEL MEMBER:  Amarillo, Texas.

8                    THE COURT:  How long?

9                    THE PANEL MEMBER:  Been here seven years.

10                   THE COURT:  And who lives at home with you, sir?

11                   THE PANEL MEMBER:  My mom and dad.

12                   THE COURT:  And are they employed?

13                   THE PANEL MEMBER:  My dad ain't.  My mom is.

14                   THE COURT:  I'm sorry.  Your dad is?

15                   THE PANEL MEMBER:  Isn't.

16                   THE COURT:  Isn't.  And your--is he retired?

17                   THE PANEL MEMBER:  No, he's just at the house right

18    now.

19                   THE COURT:  Okay.  And your mother is employed

20    where?

21                   THE PANEL MEMBER:  Federal--People's Federal Credit

22    Union.

23                   THE COURT:  And what does she do there; do you know?

24                   THE PANEL MEMBER:  I think she's, like, a loan

25    officer.

```
 1                THE COURT:  And you, sir, are you employed?

 2                THE PANEL MEMBER:  Yes, sir.

 3                THE COURT:  Where?

 4                THE PANEL MEMBER:  Swisher Electric.

 5                THE COURT:  What do you do there?

 6                THE PANEL MEMBER:  I'm an apprentice right now for a

 7      lineman.

 8                THE COURT:  Okay.  And your educational level?

 9                THE PANEL MEMBER:  High school right now.

10                THE COURT:  Thank you, sir.

11                Mr. Green, your name, please?

12                PANEL MEMBER:  Bonner Green.

13                THE COURT:  From?

14                THE PANEL MEMBER:  Amarillo.

15                THE COURT:  How long here?

16                THE PANEL MEMBER:  Five years.

17                THE COURT:  And who lives at home with you, sir?

18                THE PANEL MEMBER:  My wife, Pam.

19                THE COURT:  Is she employed outside the home?

20                THE PANEL MEMBER:  No.

21                THE COURT:  Are you employed, sir?

22                THE PANEL MEMBER:  No.

23                THE COURT:  Retired?

24                THE PANEL MEMBER:  Yes, sir.

25                THE COURT:  From?
```

1                    THE PANEL MEMBER:  Railroad and photography.

2                    THE COURT:  And your educational level, sir?

3                    THE PANEL MEMBER:  Fourteen years.

4                    THE COURT:  Thank you, sir.

5                    Ms. Henson?

6                    PANEL MEMBER:  Yes.

7                    THE COURT:  Your name, please?

8                    THE PANEL MEMBER:  My name is Machille Henson.  I'm

9       from Wheeler, Texas.

10                   THE COURT:  How long?

11                   THE PANEL MEMBER:  Forty-seven years.

12                   THE COURT:  And who lives at home with you?

13                   THE PANEL MEMBER:  My husband and my 13-year-old

14      son.

15                   THE COURT:  And your husband, is he employed?

16                   THE PANEL MEMBER:  He is a farmer/rancher.  Farming

17      and ranching.

18                   THE COURT:  Okay.  And--all right.  Are you

19      employed?

20                   THE PANEL MEMBER:  Yes, sir.

21                   THE COURT:  Where?

22                   THE PANEL MEMBER:  I teach school at Wheeler ISD,

23      fifth and sixth grade, for thirty-three years.

24                   THE COURT:  All right.  Thank you.  Your education

25      level, first?

1               THE PANEL MEMBER:  BS, bachelor's of science.

2               THE COURT:  Thank you, ma'am.

3               Mr. Billstrom?

4               PANEL MEMBER:  Yes.

5               THE COURT:  Your name, please?

6               THE PANEL MEMBER:  Gary Billstrom.

7               THE COURT:  From?

8               THE PANEL MEMBER:  Amarillo, Texas.

9               THE COURT:  How long?

10              THE PANEL MEMBER:  Since 1962.

11              THE COURT:  And who lives at home with you, sir?

12              THE PANEL MEMBER:  I live alone.

13              THE COURT:  And are you employed?

14              THE PANEL MEMBER:  OwensCorning Fiberglass.

15              THE COURT:  What do you do for them?

16              THE PANEL MEMBER:  I work for a maintenance

17   department.

18              THE COURT:  And your educational level?

19              THE PANEL MEMBER:  High school and some college.

20              THE COURT:  Thank you, sir.

21              Ms. Arroyos?

22              PANEL MEMBER:  Yes, sir.

23              THE COURT:  Your name, please?

24              THE PANEL MEMBER:  Debra Arroyos.

25              THE COURT:  From?

```
 1                    THE PANEL MEMBER:  Hereford, Texas.

 2                    THE COURT:  How long?

 3                    THE PANEL MEMBER:  Fifty years.

 4                    THE COURT:  And who lives at home with you?

 5                    THE PANEL MEMBER:  Myself and my husband and two of

 6     our children.

 7                    THE COURT:  How old are the children?

 8                    THE PANEL MEMBER:  They are nineteen and sixteen.

 9                    THE COURT:  Are either of them employed, or are they

10     both in school?

11                    THE PANEL MEMBER:  My son is working for the school

12     this summer.

13                    THE COURT:  Okay.  And your other son?

14                    THE PANEL MEMBER:  My daughter is not employed.

15                    THE COURT:  Okay.  And is your husband employed?

16                    THE PANEL MEMBER:  He works for Deaf Smith County.

17                    THE COURT:  Say again, please?

18                    THE PANEL MEMBER:  Deaf Smith County.

19                    THE COURT:  And what does he do there?

20                    THE PANEL MEMBER:  He does road maintenance.

21                    THE COURT:  And are you employed outside the home?

22                    THE PANEL MEMBER:  Yes, I am.  I work at Willis

23     Insurance.

24                    THE COURT:  And what do you do there?

25                    THE PANEL MEMBER:  I'm an insurance representative.
```

1                    THE COURT:  And your educational level?

2                    THE PANEL MEMBER:  Bachelor's in business.

3                    THE COURT:  Thank you, ma'am.

4                    Mr. White?

5                    PANEL MEMBER:  Caroll White.

6                    THE COURT:  From?

7                    THE PANEL MEMBER:  Mobeetie, Texas.

8                    THE COURT:  How long?

9                    THE PANEL MEMBER:  Thirty-five years.

10                    THE COURT:  Who lives at home with you?

11                    THE PANEL MEMBER:  My wife and youngest boy.

12                    THE COURT:  How old is your youngest boy?

13                    THE PANEL MEMBER:  Twenty-two.

14                    THE COURT:  How old?

15                    THE PANEL MEMBER:  Twenty-two.

16                    THE COURT:  Is he employed?

17                    THE PANEL MEMBER:  Yeah, he works for PBR.

18                    THE COURT:  What does he do there?

19                    THE PANEL MEMBER:  He's a field operator.

20                    THE COURT:  And is your wife employed outside the

21     home?

22                    THE PANEL MEMBER:  First Ag Credit, Wheeler.

23                    THE COURT:  What does she do there?

24                    THE PANEL MEMBER:  She's a secretary.

25                    THE COURT:  And are you employed?

```
 1                    THE PANEL MEMBER:  Yes, MSO, Conoco Phillips.

 2                    THE COURT:  And your educational level?

 3                    THE PANEL MEMBER:  High school and some trade

 4      school.

 5                    THE COURT:  Thank you, sir.

 6                    Ms. Maloy, your name, please?

 7                    PANEL MEMBER:  Erin Maloy.

 8                    THE COURT:  From?

 9                    THE PANEL MEMBER:  Amarillo, Texas.

10                    THE COURT:  How long?

11                    THE PANEL MEMBER:  Twenty-six years, if you count--

12      if you exclude travel.

13                    THE COURT:  I'm--oh, okay.

14                    THE PANEL MEMBER:  Sorry.

15                    THE COURT:  And who lives at home with you?

16                    THE PANEL MEMBER:  My parents, mom and dad.

17                    THE COURT:  And are they employed?

18                    THE PANEL MEMBER:  Yes, diesel mechanic and a

19      teacher.

20                    Diesel mechanic--

21                    THE COURT:  He's a mechanic and she's a teacher?

22                    THE PANEL MEMBER:  Uh-huh.

23                    THE COURT:  And are you employed?

24                    THE PANEL MEMBER:  Yes.

25                    THE COURT:  Where?
```

1                    THE PANEL MEMBER:  I'm self-employed, and I also

2      work for Equine Mega Omega and HorseCouponBook.com.

3                    THE COURT:  Okay.  And what--tell me about the

4      self-employment.

5                    THE PANEL MEMBER:  I do advertising, marketing, and

6      social media.

7                    THE COURT:  Okay.  And your educational level?

8                    THE PANEL MEMBER:  Some college and a high school

9      graduate.

10                   THE COURT:  Thank you, ma'am.

11                   THE PANEL MEMBER:  You're welcome.

12                   THE COURT:  Mr. Garcia, your name, please?

13                   PANEL MEMBER:  Jonny Garcia.

14                   THE COURT:  From?

15                   THE PANEL MEMBER:  Amarillo.

16                   THE COURT:  How long?

17                   THE PANEL MEMBER:  Twenty years.

18                   THE COURT:  Who lives at home with you, sir?

19                   THE PANEL MEMBER:  My girlfriend, Pam.

20                   THE COURT:  Is she employed?

21                   THE PANEL MEMBER:  No, sir.

22                   THE COURT:  Are you employed?

23                   THE PANEL MEMBER:  Yes, sir.

24                   THE COURT:  Where?

25                   THE PANEL MEMBER:  Northwest Surgery Center.

| 1 | THE COURT:  What do you do there? |

1    THE COURT:  What do you do there?

2    THE PANEL MEMBER:  Housekeeping.

3    THE COURT:  And your educational level?

4    THE PANEL MEMBER:  High school.

5    THE COURT:  Thank you, sir.

6    Mr. Keeler, your name, please?

7    PANEL MEMBER:  My name is Gary Keeler.

8    THE COURT:  From?

9    THE PANEL MEMBER:  Amarillo, Texas.

10   THE COURT:  How long?

11   THE PANEL MEMBER:  Twenty-six years.

12   THE COURT:  And who lives at home with you, sir?

13   THE PANEL MEMBER:  My fiance, six children.

14   THE COURT:  Six children?

15   THE PANEL MEMBER:  Yes, sir.

16   THE COURT:  How old is the oldest?

17   THE PANEL MEMBER:  Just turned thirteen.

18   THE COURT:  And your fiance, is she employed?

19   THE PANEL MEMBER:  No, sir.  I'm currently the only

20   breadwinner.

21   THE COURT:  All right, sir.  And where are you

22   employed?

23   THE PANEL MEMBER:  Wal-Mart.

24   THE COURT:  What do you do there?

25   THE PANEL MEMBER:  Inventory supervisor.

1          THE COURT:  And your educational level?

2          THE PANEL MEMBER:  Completed tenth grade and

3    followed up by GED.

4          THE COURT:  Thank you, sir.

5          Mr. Noble?

6          PANEL MEMBER:  Vernon Noble.

7          THE COURT:  From?

8          THE PANEL MEMBER:  Pampa.

9          THE COURT:  How long?

10         THE PANEL MEMBER:  Thirty-one years.

11         THE COURT:  And who lives at home with you, sir?

12         THE PANEL MEMBER:  My wife and two daughters.

13         THE COURT:  And how old are the girls?

14         THE PANEL MEMBER:  Fifteen and twenty.

15         THE COURT:  And is the 20-year-old employed?

16         THE PANEL MEMBER:  Yes, Advanced Health Care

17   Systems, and also a student at WT.

18         THE COURT:  And your wife, is she employed outside

19   the home?

20         THE PANEL MEMBER:  Texas Department of Criminal

21   Justice, Pardons and Parole Division.

22         THE COURT:  What does she do there?

23         THE PANEL MEMBER:  She's a laundry manager.

24         THE COURT:  Say again, please?

25         THE PANEL MEMBER:  Laundry manager.

```
1                THE COURT:  All right.  And are you employed?

2                THE PANEL MEMBER:  Yes.

3                THE COURT:  Where?

4                THE PANEL MEMBER:  Cal Farley's Boys Ranch.

5       Cal Farley's Boys Ranch.

6                THE COURT:  And what do you do there?

7                THE PANEL MEMBER:  Information technologies.

8                THE COURT:  And your educational level?

9                THE PANEL MEMBER:  Associates.

10               THE COURT:  Thank you, sir.

11               We're going to go back over to Mr. Tuls.  Mr. Tuls,

12      your name, please?

13               PANEL MEMBER:  Sid Tuls.

14               THE COURT:  From?

15               THE PANEL MEMBER:  Hereford, Texas.

16               THE COURT:  How long?

17               THE PANEL MEMBER:  Three years.

18               THE COURT:  And who lives at home with you, sir?

19               THE PANEL MEMBER:  My wife.

20               THE COURT:  Is she employed?

21               THE PANEL MEMBER:  No.

22               THE COURT:  Are you employed?

23               THE PANEL MEMBER:  Yes.

24               THE COURT:  What do you do, sir?

25               THE PANEL MEMBER:  I'm in the cattle business.
```

1     THE COURT:  And it's finally taking an uptick, isn't

2 it?  The cattle business?

3     THE PANEL MEMBER:  Yeah.

4     THE COURT:  You had a real bad drought around here

5 too?

6     THE PANEL MEMBER:  No, that didn't affect us.

7     THE COURT:  Oh, good.  And your educational level?

8     THE PANEL MEMBER:  High school.

9     THE COURT:  Thank you, sir.

10    Mr. Simpson?

11    PANEL MEMBER:  Yes, sir.

12    THE COURT:  Your name, please?

13    THE PANEL MEMBER:  Thomas Simpson.

14    THE COURT:  From?

15    THE PANEL MEMBER:  Amarillo, Texas.

16    THE COURT:  How long?

17    THE PANEL MEMBER:  Forty-nine years.

18    THE COURT:  And who lives at home with you, sir?

19    THE PANEL MEMBER:  My wife.

20    THE COURT:  Is she employed?

21    THE PANEL MEMBER:  No, sir.

22    THE COURT:  Are you employed?

23    THE PANEL MEMBER:  Yes, sir.

24    THE COURT:  Where?

25    THE PANEL MEMBER:  I work for R.E. Waldrip & Company

1       out of Pampa, Texas.

2                 THE COURT:  And what do you do there?

3                 THE PANEL MEMBER:  I sell electrical supplies.

4                 THE COURT:  And your educational level, sir?

5                 THE PANEL MEMBER:  High school.

6                 THE COURT:  Thank you, sir.

7                 Mr. Florer?

8                 PANEL MEMBER:  Yes, Martin Dean Florer.

9                 THE COURT:  From?

10                THE PANEL MEMBER:  Borger, Texas.

11                THE COURT:  How long in Borger?

12                THE PANEL MEMBER:  Fifty-five years.

13                THE COURT:  And who lives at home with you, sir?

14                THE PANEL MEMBER:  My wife.

15                THE COURT:  Is she employed?

16                THE PANEL MEMBER:  No.

17                THE COURT:  Are you employed?

18                THE PANEL MEMBER:  Yes, sir.  I work for Austin

19      Industrial over at the Borger Refinery.

20                THE COURT:  And you do what there?

21                THE PANEL MEMBER:  I'm a civil general foreman.

22                THE COURT:  And your educational level?

23                THE PANEL MEMBER:  Associate in applied science.

24                THE COURT:  Thank you, sir.

25                Mr. Brewer?

1                    PANEL MEMBER:  Scott Brewer.

2                    THE COURT:  From?

3                    THE PANEL MEMBER:  Amarillo, Texas.

4                    THE COURT:  How long?

5                    THE PANEL MEMBER:  Thirty years.

6                    THE COURT:  And who lives at home with you, sir?

7                    THE PANEL MEMBER:  My wife and two sons.

8                    THE COURT:  How old are the boys?

9                    THE PANEL MEMBER:  Fifteen and two.

10                   THE COURT:  And--  Nice spread there.

11                   THE PANEL MEMBER:  Yeah.

12                   THE COURT:  Is your wife employed outside the home?

13                   THE PANEL MEMBER:  Yes.  She works for Bank of

14   America.

15                   THE COURT:  What does she do for Bank of America?

16                   THE PANEL MEMBER:  Admin.

17                   THE COURT:  And you, sir, are you employed?

18                   THE PANEL MEMBER:  Yes, sir.  I'm a Farmer's

19   insurance agent, and I'm also--own Impact Repair Service.

20                   THE COURT:  I'm sorry, that--

21                   THE PANEL MEMBER:  I own another business also,

22   Impact Repair Service.

23                   THE COURT:  And your educational level?

24                   THE PANEL MEMBER:  High school, some college.

25                   THE COURT:  Thank you, sir.

1                  Ms. Weisgerber, your name, please?

2                  PANEL MEMBER:  Sharon Weisgerber.

3                  THE COURT:  From?

4                  THE PANEL MEMBER:  Amarillo.

5                  THE COURT:  How long?

6                  THE PANEL MEMBER:  I've been back twelve years.

7                  THE COURT:  And who lives at home with you?

8                  THE PANEL MEMBER:  Just a dog and two cats.

9                  THE COURT:  Okay.  I won't ask their age.  Are you

10   employed?

11                 THE PANEL MEMBER:  Yes.

12                 THE COURT:  Where?

13                 THE PANEL MEMBER:  Western National Life.

14                 THE COURT:  And what do you do there?

15                 THE PANEL MEMBER:  I'm a clerk.

16                 THE COURT:  All right.  And your educational level?

17                 THE PANEL MEMBER:  High school and some business

18   college.

19                 THE COURT:  Thank you, ma'am.

20                 Ms. Lorenz?

21                 PANEL MEMBER:  I'm Kelly Lorenz.

22                 THE COURT:  From?

23                 THE PANEL MEMBER:  Fritch.

24                 THE COURT:  How long?

25                 THE PANEL MEMBER:  Fifty-five years.

1     THE COURT:  And who lives at home with you?

2     THE PANEL MEMBER:  My husband, a son-in-law, and a

3 grandson.

4     THE COURT:  Are any of them employed?

5     THE PANEL MEMBER:  Yes.

6     THE COURT:  As?

7     THE PANEL MEMBER:  My husband works for Four Winds

8 out of Pampa; he's a welder.  My son-in-law, he works for R&M

9 Energy Systems out of Borger, and I don't know what they do,

10 but anyway . . .

11     THE COURT:  And are you employed?

12     THE PANEL MEMBER:  I am a hairdresser.

13     THE COURT:  Okay.  And your educational level?

14     THE PANEL MEMBER:  High school and some trade

15 school.

16     THE COURT:  Thank you, ma'am.

17     Ms. Morales, your name, please?

18     PANEL MEMBER:  Carina Morales.

19     Carina Morales.

20     THE COURT:  From?

21     THE PANEL MEMBER:  Dumas.

22     THE COURT:  How long?

23     THE PANEL MEMBER:  Fourteen years.

24     THE COURT:  And who lives at home with you?

25     THE PANEL MEMBER:  My husband and three kids.

1                    THE COURT:  How old are the children?

2                    THE PANEL MEMBER:  Eleven, nine, and seven.

3                    THE COURT:  And who is taking care of the 9- and the

4       7-year-old while you're up here doing your civic duty?

5                    THE PANEL MEMBER:  Right now, my sister.

6                    THE COURT:  Is that going to work out okay for you?

7                    THE PANEL MEMBER:  Is that what?

8                    THE COURT:  Is that going to work out?  Is your

9       sister going to be able to take care of them?

10                   THE PANEL MEMBER:  No, because she's a night nurse.

11                   THE COURT:  Do you ordinarily take care of them?

12                   THE PANEL MEMBER:  Me and my husband do.

13                   THE COURT:  Again, will that-- Well, I'll ask you

14      later.  Your husband is employed?

15                   THE PANEL MEMBER:  Yes.

16                   THE COURT:  Where?

17                   THE PANEL MEMBER:  Vivint Security.

18                   THE COURT:  And what does he do there?

19                   THE PANEL MEMBER:  He's a technician.

20                   THE COURT:  And are you employed?

21                   THE PANEL MEMBER:  Yes, sir.  Memorial--

22                   THE COURT:  Where?

23                   THE PANEL MEMBER:  --Nursing Home.

24                   THE COURT:  Where are you a nurse?

25                   THE PANEL MEMBER:  At Memorial Nursing Home in

1    Dumas.

2              THE COURT:  And do you work during the day, or night

3    shift, or what?

4              THE PANEL MEMBER:  I do both shifts.

5              THE COURT:  Okay.  All right.  Your educational

6    level?

7              THE PANEL MEMBER:  An associate in nursing.

8              THE COURT:  Thank you, ma'am.

9              Ms. Zimmerman?

10             PANEL MEMBER:  Oma Zimmerman.

11             THE COURT:  From?

12             THE PANEL MEMBER:  Amarillo.

13             THE COURT:  How long in Amarillo?

14             THE PANEL MEMBER:  Twenty-four years.

15             THE COURT:  And who lives at home with you?

16             THE PANEL MEMBER:  My husband and two sons.

17             THE COURT:  And how old are the boys?

18             THE PANEL MEMBER:  Fifteen and thirteen.

19             THE COURT:  And your husband, is he employed?

20             THE PANEL MEMBER:  Yes.

21             THE COURT:  Where?

22             THE PANEL MEMBER:  Schrader Roofing.

23             THE COURT:  What does he do at Schrader Roofing?

24             THE PANEL MEMBER:  He owns the business.  He's an

25    engineer.

1                   THE COURT:  And are you employed outside the home?

2                   THE PANEL MEMBER:  No, sir.  I'm a homemaker.

3                   THE COURT:  And your educational level?

4                   THE PANEL MEMBER:  High school.

5                   THE COURT:  Thank you, ma'am.

6                   Ms. Brownlow, your name, please?

7                   PANEL MEMBER:  Janice Brownlow.

8                   THE COURT:  From?

9                   THE PANEL MEMBER:  Hereford.

10                  THE COURT:  How long?

11                  THE PANEL MEMBER:  I was born there.

12                  THE COURT:  And who lives at home with you?

13                  THE PANEL MEMBER:  My husband.

14                  THE COURT:  Is he employed?

15                  THE PANEL MEMBER:  Yes.

16                  THE COURT:  Where?

17                  THE PANEL MEMBER:  He's self-employed.

18                  THE COURT:  As?

19                  THE PANEL MEMBER:  Johnny Brownlow Construction.

20      He's a contractor.

21                  THE COURT:  Okay.  And are you employed outside the

22      home?

23                  THE PANEL MEMBER:  Yes.  I'm a hairdresser.

24                  THE COURT:  And your educational level?

25                  THE PANEL MEMBER:  High school and cosmetology

1    school.

2              THE COURT:  Thank you, ma'am.

3              Mr. Huddleston?

4              PANEL MEMBER:  Tim Huddleston.

5              THE COURT:  Your name, please?

6              THE PANEL MEMBER:  Tim Huddleston.

7              THE COURT:  From?

8              THE PANEL MEMBER:  Canyon.

9              THE COURT:  How long?

10             THE PANEL MEMBER:  Eight years.

11             THE COURT:  And who lives at home with you, sir?

12             THE PANEL MEMBER:  My wife and two children.

13             THE COURT:  How old are the children?

14             THE PANEL MEMBER:  Seven years and four years.

15             THE COURT:  And is your wife employed outside the

16   home?

17             THE PANEL MEMBER:  Yes, sir.

18             THE COURT:  As?

19             THE PANEL MEMBER:  She's a teacher in Tulia.

20             THE COURT:  And are you employed?

21             THE PANEL MEMBER:  Yes, sir.

22             THE COURT:  Where?

23             THE PANEL MEMBER:  I work at BSA Hospital and at a

24   nursing home in Canyon.

25             THE COURT:  And your educational level?

```
1                    THE PANEL MEMBER:  Bachelor's degree in nursing.

2                    THE COURT:  Thank you, sir.

3               Ms. Arnold--

4               PANEL MEMBER:  Sue Arnold.

5                    THE COURT:  --your name, please?

6               Your name, please?

7                    THE PANEL MEMBER:  Sue Arnold.

8                    THE COURT:  From?

9                    THE PANEL MEMBER:  Amarillo, Texas.

10                   THE COURT:  I'm sorry?

11                   THE PANEL MEMBER:  Amarillo, Texas.

12                   THE COURT:  How long in Amarillo?

13                   THE PANEL MEMBER:  Forty years.

14                   THE COURT:  And who lives at home with you?

15                   THE PANEL MEMBER:  My husband, retired.

16                   THE COURT:  Retired from?

17                   THE PANEL MEMBER:  B&W Pantex, engineer.

18                   THE COURT:  And are you employed outside the home?

19                   THE PANEL MEMBER:  B&W Pantex, clerical.

20                   THE COURT:  And your educational level?

21                   THE PANEL MEMBER:  High school.

22                   THE COURT:  Thank you, ma'am.

23              Mr. Fuller?

24              PANEL MEMBER:  David Fuller.

25                   THE COURT:  From?
```

```
 1                    THE PANEL MEMBER:  McLean.

 2                    THE COURT:  How long?

 3                    THE PANEL MEMBER:  Twenty-six years.

 4                    THE COURT:  And who lives at home with you?

 5                    THE PANEL MEMBER:  My wife and two sons.

 6                    THE COURT:  How old are the boys?

 7                    THE PANEL MEMBER:  Six and three.

 8                    THE COURT:  And are you employed?

 9                    THE PANEL MEMBER:  Yes, sir.

10                    THE COURT:  Where?

11                    THE PANEL MEMBER:  Linn Energy.

12                    THE COURT:  What do you do there?

13                    THE PANEL MEMBER:  Production foreman.

14                    THE COURT:  And is your wife employed outside the

15    home?

16                    THE PANEL MEMBER:  No, sir.

17                    THE COURT:  And your educational level?

18                    THE PANEL MEMBER:  Bachelor's in animal science.

19                    THE COURT:  Thank you, sir.

20                    Mr. Garrett, your name, please, sir?

21                    PANEL MEMBER:  William Garrett.

22                    THE COURT:  From?

23                    THE PANEL MEMBER:  Dumas, Texas.

24                    THE COURT:  How long?

25                    THE PANEL MEMBER:  Five years.
```

1                    THE COURT:  And who lives at home with you?

2                    THE PANEL MEMBER:  My wife and her grandmother.

3                    THE COURT:  And is your wife employed outside the

4     home?

5                    THE PANEL MEMBER:  Yes.

6                    THE COURT:  Where?

7                    THE PANEL MEMBER:  She's at Blue Cross Blue Shield

8     here in Amarillo.

9                    THE COURT:  I'm sorry, sir?

10                   THE PANEL MEMBER:  Blue Cross Blue Shield here in

11    Amarillo.

12                   THE COURT:  What does she do with Blue Cross Blue

13    Shield?

14                   THE PANEL MEMBER:  She's a claims clerk.

15                   THE COURT:  And are you employed?

16                   THE PANEL MEMBER:  Yes.

17                   THE COURT:  Where?

18                   THE PANEL MEMBER:  Self-employed, over-the-road

19    truck driver.

20                   THE COURT:  And your educational level?

21                   THE PANEL MEMBER:  High school.

22                   THE COURT:  Thank you, sir.

23                   Ms. Hooten, your name, please?

24                   PANEL MEMBER:  No, I'm Kathy Norris.

25                   THE COURT:  I'm sorry, Ms. Norris.  I checked off

1    too soon.  I apologize.

2              THE PANEL MEMBER:  Norris is my--

3              THE COURT:  From?

4              THE PANEL MEMBER:  --maiden name.

5              I'm from here in Amarillo.

6              THE COURT:  How long?

7              THE PANEL MEMBER:  Well, I've been in different

8    places, but I've lived here for thirteen years right now,

9    almost fourteen.

10             THE COURT:  And who lives at home with you?

11             THE PANEL MEMBER:  My husband.

12             THE COURT:  And is he employed?

13             THE PANEL MEMBER:  Yes.

14             THE COURT:  Where?

15             THE PANEL MEMBER:  He works at Pride Home Center.

16   He owns a little company called All About Floors, and he also

17   works for Nest International, which is maintenance on stores

18   here in Amarillo.

19             THE COURT:  All right.  And you?  Are you employed

20   outside the home?

21             THE PANEL MEMBER:  No.  I'm retired.

22             THE COURT:  Retired from?

23             THE PANEL MEMBER:  Housekeeping and cleaning

24   businesses.

25             THE COURT:  And your educational level?

1                    THE PANEL MEMBER:  High school and two years of

2      college.

3                    THE COURT:  Thank you, ma'am.

4                    THE PANEL MEMBER:  Uh-huh.

5                    THE COURT:  Now, Ms. Hooten, your name, please?

6                    PANEL MEMBER:  Sherry Hooten.

7                    THE COURT:  From?

8                    THE PANEL MEMBER:  Amarillo.

9                    THE COURT:  How long?

10                   THE PANEL MEMBER:  Twenty-seven years.

11                   THE COURT:  I beg your pardon?

12                   THE PANEL MEMBER:  Twenty-seven years.

13                   THE COURT:  And who lives at home with you?

14                   THE PANEL MEMBER:  My husband and oldest daughter.

15                   THE COURT:  And how old is your daughter?

16                   THE PANEL MEMBER:  She is thirty.

17                   THE COURT:  Is she employed?

18                   THE PANEL MEMBER:  She is a nursing student and also

19     employed at Northwest Texas Hospital.

20                   THE COURT:  And are you employed outside the home?

21                   THE PANEL MEMBER:  Yes, Amarillo schools.

22                   THE COURT:  What do you do there?

23                   THE PANEL MEMBER:  I work in the maintenance

24     planning department as a scheduler.

25                   THE COURT:  Okay.  And your husband?  Is he

1    employed?

2              THE PANEL MEMBER:  He is self-employed.

3              THE COURT:  As?

4              THE PANEL MEMBER:  He owns Amarillo Sandblast and

5    Powdercoat.

6              THE COURT:  And your educational level?

7              THE PANEL MEMBER:  High school and some college.

8              THE COURT:  Thank you, ma'am.

9              THE PANEL MEMBER:  You're welcome.

10             THE COURT:  Mr. Smith, your name, please, sir?

11             PANEL MEMBER:  Matthew Smith.

12             THE COURT:  From?

13             THE PANEL MEMBER:  Stinnett, Texas.

14             THE COURT:  How long?

15             THE PANEL MEMBER:  Six months.

16             THE COURT:  And who lives at home with you?

17             THE PANEL MEMBER:  My wife and three kids.

18             THE COURT:  How old are the children?

19             THE PANEL MEMBER:  Nine, eight, and a year and a

20   half.

21             THE COURT:  And is your wife employed outside the

22   home?

23             THE PANEL MEMBER:  No, sir.

24             THE COURT:  Are you employed?

25             THE PANEL MEMBER:  Yes.

1                THE COURT:  As?

2                THE PANEL MEMBER:  I work for B&G Electric as a

3    journeyman electrician and lineman.

4                THE COURT:  And your educational level?

5                THE PANEL MEMBER:  High school and trade school.

6                THE COURT:  Thank you, sir.

7                Mr. Laurie?

8                PANEL MEMBER:  Lance Laurie.

9                THE COURT:  From?

10               THE PANEL MEMBER:  Booker, Texas.

11               THE COURT:  How long?

12               THE PANEL MEMBER:  Fifty years.

13               THE COURT:  And who lives at home with you?

14               THE PANEL MEMBER:  My wife and 17-year-old daughter.

15               THE COURT:  And is your daughter still in school?

16               THE PANEL MEMBER:  Yes.

17               THE COURT:  And is your wife employed outside the

18   home?

19               THE PANEL MEMBER:  Yes.  She teaches kindergarten at

20   the school.

21               THE COURT:  And you, sir?  Are you employed?

22               THE PANEL MEMBER:  Yes, I work for BP.

23               THE COURT:  For BP?

24               THE PANEL MEMBER:  Yes.

25               THE COURT:  As?

1                    THE PANEL MEMBER:  An operation tech.

2                    THE COURT:  All right.  And your educational level?

3                    THE PANEL MEMBER:  College graduate.

4                    THE COURT:  From--  All right.  Got it.  Thank you.

5                    Mr. Sharber?

6                    PANEL MEMBER:  Rex Sharber.

7                    THE COURT:  From?

8                    THE PANEL MEMBER:  Fritch right now.

9                    THE COURT:  How long?

10                   THE PANEL MEMBER:  Eleven years.

11                   THE COURT:  And who lives at home with you, sir?

12                   THE PANEL MEMBER:  Wife and stepson.

13                   THE COURT:  And how old is your stepson?

14                   THE PANEL MEMBER:  Nineteen.

15                   THE COURT:  Is he employed?

16                   THE PANEL MEMBER:  Yes.

17                   THE COURT:  Where?

18                   THE PANEL MEMBER:  Delivering pizza.

19                   THE COURT:  And is your wife employed outside the

20   home?

21                   THE PANEL MEMBER:  American General Life.

22                   THE COURT:  And what does she do there?

23                   THE PANEL MEMBER:  She's a legal secretary.

24                   THE COURT:  Okay.  And are you employed?

25                   THE PANEL MEMBER:  Currently employed at Phillips.

1                    THE COURT:  At?

2                    THE PANEL MEMBER:  Phillips.

3                    THE COURT:  And what do you do there?

4                    THE PANEL MEMBER:  I'm an operator.

5                    THE COURT:  Okay.  And your educational level?

6                    THE PANEL MEMBER:  Bachelor of science in social

7       science.

8                    THE COURT:  Thank you, sir.

9                    Mr. Combs?

10                   PANEL MEMBER:  My name is Richard Combs.

11                   THE COURT:  From?

12                   THE PANEL MEMBER:  Amarillo, Texas.

13                   THE COURT:  How long?

14                   THE PANEL MEMBER:  Forty-one years.

15                   THE COURT:  And who lives at home with you, sir?

16                   THE PANEL MEMBER:  My 12-year-old son.

17                   THE COURT:  And are you employed?

18                   THE PANEL MEMBER:  Yes, sir.

19                   THE COURT:  Where?

20                   THE PANEL MEMBER:  At AT&T, American Telegraph &

21      Telephone.

22                   THE COURT:  And what do you do there?

23                   THE PANEL MEMBER:  I'm a customer service

24      specialist.

25                   THE COURT:  And your educational level?

1                    THE PANEL MEMBER:  High school.

2                    THE COURT:  Thank you very much, sir.

3                    Mr. Ventura?

4                    PANEL MEMBER:  Robert Ventura.

5                    THE COURT:  From?

6                    THE PANEL MEMBER:  Perryton, Texas.

7                    THE COURT:  How long?

8                    THE PANEL MEMBER:  Four years.

9                    THE COURT:  And who lives at home with you, sir?

10                   THE PANEL MEMBER:  My wife and my 15-year-old son.

11                   THE COURT:  And is your wife employed?

12                   THE PANEL MEMBER:  Yes, sir.  She's a high school

13   math teacher for Perryton ISD.

14                   THE COURT:  And you, sir?  Are you employed?

15                   THE PANEL MEMBER:  Yes, sir.  I'm a teacher/coach

16   for Perryton ISD.

17                   THE COURT:  Coaching?

18                   THE PANEL MEMBER:  Football, head girls track and

19   girls coordinator.

20                   THE COURT:  Okay.  And your educational level, sir?

21                   THE PANEL MEMBER:  Bachelor of science.

22                   THE COURT:  Thank you, sir.

23                   THE PANEL MEMBER:  You're welcome.

24                   THE COURT:  Ms. Swapp?

25                   PANEL MEMBER:  April Swapp.

```
1                    THE COURT:  From?

2                    THE PANEL MEMBER:  Amarillo.

3                    THE COURT:  How long?

4                    THE PANEL MEMBER:  Nine years.

5                    THE COURT:  Who lives at home with you?

6                    THE PANEL MEMBER:  My little sister.

7                    THE COURT:  And is she employed?

8                    THE PANEL MEMBER:  Yes.  She works at BSA and

9       United.

10                   THE COURT:  And are you employed?

11                   THE PANEL MEMBER:  Yes.  I work at Wal-Mart and

12      United.

13                   THE COURT:  And what do you do there?

14                   THE PANEL MEMBER:  I'm an invoice clerk at Wal-Mart

15      and a fry cook at United.

16                   THE COURT:  And your educational level?

17                   THE PANEL MEMBER:  Some college.

18                   THE COURT:  Thank you, ma'am.

19                   Ms. Benton, your name, please?

20                   PANEL MEMBER:  Elizabeth Benton.

21                   THE COURT:  From?

22                   THE PANEL MEMBER:  Amarillo, Texas.

23                   THE COURT:  How long?

24                   THE PANEL MEMBER:  Fifty-seven years.

25                   THE COURT:  And who lives at home with you?
```

1                    THE PANEL MEMBER:  My husband.

2                    THE COURT:  Is he employed?

3                    THE PANEL MEMBER:  Yes, sir.  He's a senior account

4        manager for NCR Corporation.

5                    THE COURT:  And you?  Are you employed outside the

6        home?

7                    THE PANEL MEMBER:  Yes, sir.  I'm self-employed.

8        I'm a decorator.

9                    THE COURT:  And your educational level?

10                   THE PANEL MEMBER:  I have high school and

11       cosmetology school, and then ended up a decorator.

12                   THE PANEL MEMBER:  Thank you, ma'am.

13                   Mr. Sorrels?

14                   PANEL MEMBER:  Mark Sorrels.

15                   THE COURT:  From?

16                   THE PANEL MEMBER:  From Amarillo.

17                   THE COURT:  How long?

18                   THE PANEL MEMBER:  Forty-five years.

19                   THE COURT:  And who lives at home with you, sir?

20                   THE PANEL MEMBER:  My wife LeeAnn and my daughter,

21       twelve years old.

22                   THE COURT:  And is your wife employed outside the

23       home?

24                   THE PANEL MEMBER:  Yes.  She's a self-employed

25       counselor.

```
 1                  THE COURT:  Where?

 2                  THE PANEL MEMBER:  She has a business called--

 3                  THE COURT:  Oh, okay.  I understand now.  Sorry.

 4     And are you employed?

 5                  THE PANEL MEMBER:  Yes.  I'm a general manager for

 6     Guy's Plumbing, Heating and Air.

 7                  THE COURT:  And your educational level?

 8                  THE PANEL MEMBER:  Master's in business.

 9                  THE COURT:  Thank you, sir.

10                  Mr. Grieve, your name, please?

11                  PANEL MEMBER:  Matthew Grieve.

12                  THE COURT:  From?

13                  THE PANEL MEMBER:  Amarillo, Texas.

14                  THE COURT:  How long?

15                  THE PANEL MEMBER:  Ten years.

16                  THE COURT:  And who lives at home with you, sir?

17                  THE PANEL MEMBER:  My 2-year-old daughter and

18     girlfriend.

19                  THE COURT:  Okay.  And who is taking care of the

20     3-year-old daughter?

21                  THE PANEL MEMBER:  Her mother.

22                  THE COURT:  And that's--you don't ordinarily take

23     care of her?

24                  THE PANEL MEMBER:  No, not--

25                  THE COURT:  No, I understand that.  Your daughter--
```

```
1                    THE PANEL MEMBER:  What did you say?

2                    THE COURT:  Your daughter, the 3-year-old, is that

3      her daughter or yours?

4                    THE PANEL MEMBER:  It's my daughter.

5                    THE COURT:  And who ordinarily takes care of the

6      3-year-old?

7                    THE PANEL MEMBER:  Who's taking care of her?

8                    THE COURT:  Yeah.

9                    THE PANEL MEMBER:  Her mother.

10                   THE COURT:  Okay.  Is your girlfriend employed?

11                   THE PANEL MEMBER:  Yes, sir.

12                   THE COURT:  Where?

13                   THE PANEL MEMBER:  AIG Insurance.

14                   THE COURT:  And are you employed?

15                   THE PANEL MEMBER:  Yes, sir.

16                   THE COURT:  Where?

17                   THE PANEL MEMBER:  J.D. Tires & Wheels.

18                   THE COURT:  What do you do there?

19                   THE PANEL MEMBER:  General manager.

20                   THE COURT:  And your educational level?

21                   THE PANEL MEMBER:  Bachelor's in accounting.

22                   THE COURT:  Thank you, sir.

23                   Ms. Powell, your name, please?

24                   PANEL MEMBER:  Rebecca Powell.

25                   THE COURT:  From?
```

1               THE PANEL MEMBER:  Amarillo.

2               THE COURT:  How long here?

3               THE PANEL MEMBER:  Sixty-three years.

4               THE COURT:  And who lives at home with you?

5               THE PANEL MEMBER:  Nobody.

6               THE COURT:  And are you employed?

7               THE PANEL MEMBER:  No.  I'm retired.

8               THE COURT:  Retired from?

9               THE PANEL MEMBER:  Wal-Mart.

10              THE COURT:  And what did you do for Wal-Mart?

11              THE PANEL MEMBER:  I was an overnight stocker.

12              THE COURT:  And your educational level?

13              THE PANEL MEMBER:  High school.

14              THE COURT:  Thank you, ma'am.

15              Ms. Moore, your name, please?

16              PANEL MEMBER:  Elizabeth Moore.

17              THE COURT:  From?

18              THE PANEL MEMBER:  Canyon, Texas.

19              THE COURT:  How long in Canyon?

20              THE PANEL MEMBER:  Twelve years.

21              THE COURT:  And who lives at home with you?

22              THE PANEL MEMBER:  My husband and our two children.

23              THE COURT:  How old are the children?

24              THE PANEL MEMBER:  Eight and five.

25              THE COURT:  And is your husband employed?

1                 THE PANEL MEMBER:  Yes, sir.

2                 THE COURT:  Where?

3                 THE PANEL MEMBER:  At West Texas A&M University.

4                 THE COURT:  What does he do there?

5                 THE PANEL MEMBER:  He's the interim director of

6    admissions.

7                 THE COURT:  And are you employed?

8                 THE PANEL MEMBER:  Yes, sir.

9                 THE COURT:  Where?

10                THE PANEL MEMBER:  West Texas A&M University.

11                THE COURT:  And what do you do there?

12                THE PANEL MEMBER:  I'm a part-time instructor.

13                THE COURT:  And the 8- and the 5-year-old, do you

14   ordinarily take care of them, or are they in day care or what?

15                THE PANEL MEMBER:  During the summers, since I'm

16   part-time, I take care of them at home.

17                THE COURT:  Okay.  Do--  Okay.  I'll ask you later.

18                And your educational level?

19                THE PANEL MEMBER:  I have a master's.

20                THE COURT:  Thank you, ma'am.

21                Mr. Jupe--am I pronouncing it correctly?

22                PANEL MEMBER:  Jason Jupe.

23                THE COURT:  From?

24                THE PANEL MEMBER:  Canyon.

25                THE COURT:  How long?

1                    THE PANEL MEMBER:  Twenty-nine years.

2                    THE COURT:  And who lives at home with you?

3                    THE PANEL MEMBER:  My brother.

4                    THE COURT:  Is he employed?

5                    THE PANEL MEMBER:  Yes.  He's a manager at A to Z

6        Tire.

7                    THE COURT:  And are you employed?

8                    THE PANEL MEMBER:  Yes.  I work for Texas Department

9        of Transportation.

10                   THE COURT:  What do you do for the Texas--

11                   THE PANEL MEMBER:  I'm a mechanic.

12                   THE COURT:  Beg your pardon?

13                   THE PANEL MEMBER:  Mechanic.

14                   THE COURT:  And your educational level?

15                   THE PANEL MEMBER:  Some college.

16                   THE COURT:  Thank you, sir.

17                   Mr. Blodgett, your name, please?

18                   PANEL MEMBER:  Kevin Blodgett.

19                   THE COURT:  From?

20                   THE PANEL MEMBER:  White Deer.

21                   THE COURT:  How long?

22                   THE PANEL MEMBER:  Forty-six years.

23                   THE COURT:  And who lives at home with you, sir?

24                   THE PANEL MEMBER:  Wife and two children, seventeen

25       and eight.

1          THE COURT:  The 17-year-old still in school?

2          THE PANEL MEMBER:  Yes, sir.

3          THE COURT:  Is your wife employed outside the home?

4          THE PANEL MEMBER:  No, sir.

5          THE COURT:  Are you employed?

6          THE PANEL MEMBER:  Yes, sir.

7          THE COURT:  Where?

8          THE PANEL MEMBER:  Team Industrial Services.

9          THE COURT:  What do you do there?

10         THE PANEL MEMBER:  Technician.

11         THE COURT:  And your educational level?

12         THE PANEL MEMBER:  Some college.

13         THE COURT:  Thank you, sir.

14         Ms. Jenkins, your name, please?

15         PANEL MEMBER:  Evelyn Jenkins.

16         THE COURT:  From?

17         THE PANEL MEMBER:  Canyon.

18         THE COURT:  How long?

19         THE PANEL MEMBER:  Forty years.

20         THE COURT:  And who lives at home with you?

21         THE PANEL MEMBER:  My husband.

22         THE COURT:  And are you employed?

23         THE PANEL MEMBER:  Yes, I am.

24         THE COURT:  Where?

25         THE PANEL MEMBER:  At Region 16 Education Service

1    Center.

2              THE COURT:  And what do you do there?

3              THE PANEL MEMBER:  I'm manager of line mass

4    information management systems.

5              THE COURT:  And your husband?  Is he employed?

6              THE PANEL MEMBER:  He's self-employed, software

7    consultant.

8              THE COURT:  Say--

9              THE PANEL MEMBER:  Software consultant.

10             THE COURT:  Okay.  And your educational level?

11             THE PANEL MEMBER:  MBA.

12             THE COURT:  Thank you, ma'am.

13             Mr. Reed, your name?

14             PANEL MEMBER:  Yes, sir.  My name is Roy Reed.

15             THE COURT:  From?

16             THE PANEL MEMBER:  Pampa, Texas.

17             THE COURT:  How long in Pampa?

18             THE PANEL MEMBER:  Most of the last fifty years.

19             THE COURT:  And who lives at home with you, sir?

20             THE PANEL MEMBER:  My wife Kathy and my dog Coco.

21             THE COURT:  All right.  And your wife, is she

22    employed outside the home?

23             THE PANEL MEMBER:  No, sir.

24             THE COURT:  Are you employed?

25             THE PANEL MEMBER:  I am self-employed.

1                    THE COURT:  As?

2                    THE PANEL MEMBER:  I have a small septic pumping

3     service over there for the last nine years.

4                    THE COURT:  All right.  And your educational level?

5                    THE PANEL MEMBER:  A little bit of college.

6                    THE COURT:  Thank you, sir.

7                    THE PANEL MEMBER:  Thank you.

8                    THE COURT:  Mr. Yara--Yara?

9                    PANEL MEMBER:  Dancy.  Steve Dancy.

10                   THE COURT:  Whoa, whoa.  I got ahead of myself

11    again.  Sorry.

12                   Mr. Dancy, your name, please?

13                   THE PANEL MEMBER:  Steve Dancy.

14                   THE COURT:  From?

15                   THE PANEL MEMBER:  Pampa, Texas.

16                   THE COURT:  How long?

17                   THE PANEL MEMBER:  Seventeen years.

18                   THE COURT:  And who lives at home with you?

19                   THE PANEL MEMBER:  My mom.

20                   THE COURT:  And is she employed?

21                   THE PANEL MEMBER:  No, sir.

22                   THE COURT:  Are you employed?

23                   THE PANEL MEMBER:  Yes, sir.

24                   THE COURT:  Where?

25                   THE PANEL MEMBER:  I work for an individual.  I'm a

1    house painter.

2                 THE COURT:  And your educational level?

3                 THE PANEL MEMBER:  High school and some trade

4    school.

5                 THE COURT:  All right.  Thank you, sir.

6                 Now, Ms. Yara?

7                 PANEL MEMBER:  Joni Yara.

8                 THE COURT:  From?

9                 THE PANEL MEMBER:  Booker.

10                THE COURT:  How long?

11                THE PANEL MEMBER:  Seven years.

12                THE COURT:  And who lives at home with you?

13                THE PANEL MEMBER:  My husband and two sons.

14                THE COURT:  And how old are the boys?

15                THE PANEL MEMBER:  One and six.

16                THE COURT:  And who ordinarily takes care of them?

17                THE PANEL MEMBER:  My mother-in-law.

18                THE COURT:  And that's--so that's covered; is that

19   right?

20                THE PANEL MEMBER:  Yes, yes.

21                THE COURT:  And is your husband employed?

22                THE PANEL MEMBER:  Yes.

23                THE COURT:  Where?

24                THE PANEL MEMBER:  W-B Supply in Perryton.

25                THE COURT:  What does he do there?

1                THE PANEL MEMBER:  He's a truck driver.

2                THE COURT:  And are you employed?

3                THE PANEL MEMBER:  Yes.

4                THE COURT:  Where?

5                THE PANEL MEMBER:  Booker News.

6                THE COURT:  And what do you do there?

7                THE PANEL MEMBER:  I'm the editor.

8                THE COURT:  And your educational level?

9                THE PANEL MEMBER:  High school and some college.

10                THE COURT:  Thank you, ma'am.

11                Mr. Vasquez, your name, please?

12                PANEL MEMBER:  Jeremy Vasquez.

13                THE COURT:  From?

14                THE PANEL MEMBER:  Amarillo.

15                THE COURT:  How long?

16                THE PANEL MEMBER:  Eight years.

17                THE COURT:  And who lives at home with you?

18                THE PANEL MEMBER:  My wife and two kids.

19                THE COURT:  How old are the children?

20                THE PANEL MEMBER:  Five and seven.

21                THE COURT:  And your wife?  Is she employed outside

22    the home?

23                THE PANEL MEMBER:  No.

24                THE COURT:  And you, sir?  Are you employed?

25                THE PANEL MEMBER:  Yes.

```
1                    THE COURT:  Where?

2                    THE PANEL MEMBER:  Bell Helicopter, production

3       specialist.

4                    THE COURT:  And your educational level?

5                    THE PANEL MEMBER:  High school.

6                    THE COURT:  Thank you, sir.

7                    Ms. Smith, your name, please?

8                    THE PANEL MEMBER:  Mary Smith.

9                    THE COURT:  From?

10                   THE PANEL MEMBER:  Dumas, Texas.

11                   THE COURT:  How long?

12                   THE PANEL MEMBER:  Forty-three years.

13                   THE COURT:  And who lives at home with you?

14                   THE PANEL MEMBER:  Myself.

15                   THE COURT:  And are you employed?

16                   THE PANEL MEMBER:  Yes, sir.

17                   THE COURT:  Where?

18                   THE PANEL MEMBER:  Wal-Mart as a sales associate.

19                   THE COURT:  And your educational level?

20                   THE PANEL MEMBER:  High school.

21                   THE COURT:  Thank you, ma'am.

22                   And, last, Ms. Jackson?

23                   PANEL MEMBER:  Shannon Jackson.

24                   THE COURT:  From?

25                   THE PANEL MEMBER:  Spearman.
```

```
1                    THE COURT:  How long?

2                    THE PANEL MEMBER:  Two years.

3                    THE COURT:  Who lives at home with you?

4                    THE PANEL MEMBER:  My husband and three kids.

5                    THE COURT:  How old are the children?

6                    THE PANEL MEMBER:  Twelve, fourteen, and sixteen.

7                    THE COURT:  And your husband, is he employed?

8                    THE PANEL MEMBER:  Yes.

9                    THE COURT:  Where?

10                   THE PANEL MEMBER:  He farms in Spearman.

11                   THE COURT:  And are you employed outside the home?

12                   THE PANEL MEMBER:  Well, I sub at the high school.

13                   THE COURT:  Okay.  And your educational level?

14                   THE PANEL MEMBER:  BS in education, math and

15       computers.

16                   THE COURT:  Thank you, ma'am.

17                   All right.  It is a guiding principle of the

18       American system of justice that any person accused of a crime

19       is considered innocent until such time as he is proven guilty

20       beyond a reasonable doubt to the satisfaction of a jury of his

21       peers.

22                   With that principle in mind, do each of you

23       understand that an indictment is simply the government's

24       accusation against the defendant; it is not evidence of his

25       guilt?  If you don't understand that or you don't agree with
```

1    it, please raise your hand.

2              Do you understand you can't draw an inference that

3    the defendant is guilty of anything just because the government

4    has accused him?  If you don't agree with that, raise your

5    hand.

6              Would any of you have any difficulty applying those

7    principles?  If you would, raise your hand.

8              In other words, will each of you require the

9    government to prove to you the guilt of the defendant beyond a

10   reasonable doubt before you can render a verdict of guilty?  If

11   you can't do that, raise your hand.

12             On the other hand, if the government does prove the

13   defendant guilty beyond a reasonable doubt, would you be able

14   to say "guilty"?  If not, raise your hand.

15             Can you put aside any feelings of prejudice,

16   sympathy, or passion and decide this case solely on the

17   evidence that you see and hear in this courtroom and the law as

18   I give it at the close of the case without regard to the

19   consequences to either the prosecution or the defendant?  If

20   you can't do that, raise your hand.

21             If you're selected to serve on this jury, can you

22   vote your own mind, even if you are in a small minority?  If

23   you feel you can't, raise your hand.

24             Mr.-- Excuse me for just a second.

25             Mr. Haag, would you stand up and introduce everybody

1     at your table, please.

2            MR. HAAG:  Yes, Your Honor.  Thank you.

3            Good morning, ladies and gentlemen of the jury.  My

4     name is Jeffrey Haag, and I represent the United States of

5     America in this case.  I'm from the Lubbock office.

6            Representing the United States with me this morning

7     is Denise Williams.  She's the deputy criminal chief for our

8     Lubbock office.

9            We also have Assistant United States Attorney James

10    Jacks, also Jim Jacks.

11           MR. JACKS:  Good morning.

12           MR. HAAG:  He's from our Dallas office.

13           Matt Kacsmaryk, he's from our Fort Worth office.

14           David Cora, he is from our Washington, D.C. office.

15           MR. CORA:  Good morning, ladies and gentlemen.

16           MR. HAAG:  Additional persons that will be helping

17    me try the case today are going to be FBI Special Agents

18    Michael Orndorff from the Lubbock office, and Kevin Gentry and

19    Loretta Smitherman from the Dallas FBI office.

20           Additionally, not present here this morning but

21    present during trial will be Diana Christensen.  She is a

22    litigation specialist, support technician, and she will be here

23    from our Dallas office.

24           THE COURT:  Mr. Cogdell?

25           MR. COGDELL:  Thank you, Your Honor.

1          Good morning.  My name is Dan Cogdell.  I'm a lawyer

2    from Houston, Texas.  I live in The Woodlands.  It's a little

3    town north of Houston.

4          Assisting me is Paul Doyle to my left.

5          MR. DOYLE:  Good morning.

6          MR. COGDELL:  He's also helping us try this case.

7    He is from Houston.

8          Next to him is the accused person in this case.

9    This is Khalid Aldawsari.  Until recently, he was living in the

10   Lubbock area.

11         Thank you, Mr. Aldawsari.

12         Next to him is Jonathan Leach, who's going to be

13   helping us just this morning with the jury selection.

14         And last but not least is my intrepid associate,

15   Mr. Dennis Hester.

16         MR. HESTER:  Good morning.

17         MR. COGDELL:  This is his first experience in a

18   courtroom, so be kind to him.  Thank you.

19         THE COURT:  All right.  Any of you know any of these

20   folk?  Anybody?  Okay.

21         To the best of your knowledge, has any member of--

22   you or any member of your immediate family been represented by

23   any of these lawyers?

24         Are any other members of the jury panel--are any of

25   you related to anybody else on the jury panel?  Okay.

1            Have any of you ever participated in a criminal case

2    before?  All right.  Let's start on this first--  Well, let's

3    see.  Go ahead.  Hand it to somebody that held their hand up.

4    Your name, please?

5            PANEL MEMBER:  Elizabeth Benton.

6            THE COURT:  And how did you participate in a--

7            THE PANEL MEMBER:  It was about two years ago.  I

8    was on a trial in Randall County pertaining to a burglary.

9            THE COURT:  Okay.

10           Somebody else had raised their hand.  Your name,

11   please, sir?

12           PANEL MEMBER:  Mark Sorrels.

13           THE COURT:  And how did you participate in a

14   criminal case?

15           THE PANEL MEMBER:  I was on a murder trial once, and

16   then a couple of years ago I was on a drug smuggling trial.

17           THE COURT:  You were what?

18           THE PANEL MEMBER:  On a drug smuggling trial.

19           THE COURT:  Okay.  How was the verdict in both of

20   those cases?

21           THE PANEL MEMBER:  Guilty, both.

22           THE COURT:  All right.  Anybody else over here?

23   We'll get this side first.  Anybody else on this side?

24           Okay.  On this side.  Your name, please?

25           PANEL MEMBER:  Sue Arnold.

1             THE COURT:  And tell me how you participated.

2             THE PANEL MEMBER:  It's been about 25 years ago.  It

3    was a DWI.

4             THE COURT:  Oh, okay.  Anybody else?  Yes.

5             PANEL MEMBER:  Kathy Norris.  About five years ago,

6    I was a jury member on a trespassing case.

7             THE COURT:  Guilty or not guilty?

8             THE PANEL MEMBER:  Not guilty.

9             THE COURT:  Okay.

10            THE PANEL MEMBER:  But I found out later that--

11            THE COURT:  Well, that's okay.  All right.  Okay.

12   Anybody else?  Did we miss anybody?

13            PANEL MEMBER:  I'm not sure if this is right or not,

14   but a bad check.

15            THE COURT:  Beg your pardon?

16            THE PANEL MEMBER:  It was a bad check.  Is that

17   right?

18            THE COURT:  Yes.

19            THE PANEL MEMBER:  Okay.  That's criminal.  Correct?

20            THE COURT:  Yes.

21            THE PANEL MEMBER:  Okay.

22            THE COURT:  And I'm sorry--

23            THE PANEL MEMBER:  A bad check.  That's the trial

24   that I was on.

25            THE COURT:  Oh, okay.  Guilty or not guilty?

1                THE PANEL MEMBER:  It's been a long time.

2                THE COURT:  That's okay.  Who else did we miss?

3                PANEL MEMBER:  Lance Laurie.  I was on a DWI case.

4                THE COURT:  Guilty or not guilty?

5                THE PANEL MEMBER:  It was guilty.

6                THE COURT:  All right.  And somebody else right next

7    to you.  Your name, please, sir?

8                PANEL MEMBER:  Rex Sharber.  I worked as a private

9    investigator for a capital murder case and an aggravated sexual

10   assault case.

11               THE COURT:  Okay.  Anybody else?

12               PANEL MEMBER:  I'm Roy Reed.  I've served on two

13   different criminal cases.  They were both drug-related, and

14   they both resulted in guilty verdicts.

15               THE COURT:  All right.  Thank you.

16               Did we miss anybody?  Got everybody?  Oh, we missed

17   a couple people on this side.  Sorry.  Go ahead.

18               PANEL MEMBER:  Gary Billstrom.

19               THE COURT:  And what was that, sir?

20               THE PANEL MEMBER:  It was a Potter County trial,

21   burglary of a school, and it actually ended in a mistrial, so--

22               THE COURT:  Okay.  Thank you.

23               Anybody else on that side?  Anybody that we--  All

24   right.  We have a couple over on this side.  Your name, sir?

25               PANEL MEMBER:  Tom Simpson.  I was on a child abuse

1    trial.

2              THE COURT:  Guilty or not guilty?

3              THE PANEL MEMBER:  Guilty.

4              THE COURT:  All right.  Anybody else that we missed?

5    Anybody?  Yes, right here.

6              PANEL MEMBER:  Janice Brownlow.  I was on a--it was

7    a drug-related--excuse me--a drug-related case.

8              THE COURT:  Guilty or not guilty?

9              THE PANEL MEMBER:  Guilty.

10             THE COURT:  Thank you.

11             Is that everybody?  Did we miss--

12             PANEL MEMBER:  Excuse me.  I forgot the other

13   criminal trial.

14             THE COURT:  Okay.  Your name again, please?

15             THE PANEL MEMBER:  Gary Billstrom.  It was a

16   shooting outside of town.

17             THE COURT:  Guilty or not guilty?

18             THE PANEL MEMBER:  And it was guilty.

19             THE COURT:  Okay.

20             Okay.  Have any of you ever served as a law

21   enforcement officer?  Over here.  Tell me about that, sir.

22             PANEL MEMBER:  Vernon Noble.  Texas Department of

23   Criminal Justice as a correctional officer.

24             THE COURT:  Okay.  Would that fact in any way keep

25   you from being a fair and impartial juror?

1          THE PANEL MEMBER:  No, sir, it would not.

2          THE COURT:  Anybody else?  Yes, sir.

3          PANEL MEMBER:  Rex Sharber.  Retired from the Parole

4   Division of Texas.

5          THE COURT:  I'm--

6          THE PANEL MEMBER:  The Institutional Parole Division

7   of Texas.

8          THE COURT:  Would that fact in any way inhibit you

9   from becoming a fair and impartial juror?

10          THE PANEL MEMBER:  No, sir.

11          THE COURT:  Did we miss anybody else?  Thank you.

12          Is any member of your immediate family or close

13   personal friend a law enforcement officer?  Okay.  Let's start

14   over here on this side.

15          PANEL MEMBER:  My name is Kelly Lorenz.

16          THE COURT:  And tell me about that.

17          THE PANEL MEMBER:  I have some friends that work for

18   the Hutchinson County Sheriff's Office in Stinnett.

19          THE COURT:  And would that fact in any way inhibit

20   your ability to be a fair and impartial juror?

21          THE PANEL MEMBER:  No, sir.

22          THE COURT:  Okay.  Thank you.

23          And, I think, Ms. Jackson?

24          PANEL MEMBER:  I have a cousin who is a member of

25   the Amarillo Police Department.

1                    THE COURT:  Same question.  Would that fact in any

2      way inhibit you from becoming a fair and impartial juror?

3                    THE PANEL MEMBER:  No.

4                    THE COURT:  Okay.  Anybody else on that side?  Now--

5      Excuse me.  Your name, sir?

6                    PANEL MEMBER:  Kevin McDonald.  I have a

7      brother-in-law in Yuma, Arizona, who works for the Border

8      Patrol.

9                    THE COURT:  Same question.  Would that in any way

10     inhibit you from being a fair and impartial juror?

11                   THE PANEL MEMBER:  Not at all.

12                   THE COURT:  All right.  Thank you.

13                   PANEL MEMBER:  Scottie Brewer.  I have an uncle who

14     is a police officer in Hereford, Texas.

15                   THE COURT:  Same question.

16                   THE PANEL MEMBER:  No.

17                   THE COURT:  Anybody else on that side?

18                   How about on this side?  Let's start.

19                   PANEL MEMBER:  Machille Henson, and my son-in-law is

20     a deputy in Wheeler, Texas.

21                   THE COURT:  Would that in any--

22                   THE PANEL MEMBER:  No, sir, it would not.

23                   THE COURT:  Okay.  Pass it on down.  I think there's

24     somebody down at the end.  Oh, yes, sir.

25                   PANEL MEMBER:  Gary Billstrom.  My sister's husband

1    works at the Clements Unit as a correctional officer.

2              THE COURT:  And I'll ask you the same question, sir.

3    Would that in any way inhibit--

4              THE PANEL MEMBER:  No, it would not.

5              THE COURT:  All right.  I think it's down this end.

6              PANEL MEMBER:  Vernon Noble.  My wife is with the

7    Texas Department of Criminal Justice Pardons and Parole

8    Division, and no, it would not.

9              THE COURT:  All right.  And somebody at the back?

10             PANEL MEMBER:  Sherry Hooten.  I have a

11   brother-in-law that's with the Amarillo Police Department and a

12   good friend that's with the Randall County Sheriff's Office.

13             THE COURT:  And would--would those facts--

14             THE PANEL MEMBER:  No, it would not.

15             THE COURT:  --in any way inhibit you from being a

16   fair and impartial juror?

17             THE PANEL MEMBER:  No, sir.

18             THE COURT:  No?

19             THE PANEL MEMBER:  No, sir.

20             THE COURT:  All right.  Anybody else?  Yes, ma'am?

21             PANEL MEMBER:  Sue Arnold.  I have a grandson who

22   just graduated from the New Mexico State Police Academy.

23             THE COURT:  And same question to you.

24             THE PANEL MEMBER:  No.

25             THE COURT:  Okay.

1          PANEL MEMBER:  Jason Jupe.  My father is--works for
2     Potter County Sheriff's Department, and--
3          THE COURT:  Same question to you.  Would not?
4          THE PANEL MEMBER:  No, sir.
5          THE COURT:  All right.  Yes, sir?
6          PANEL MEMBER:  Roy Reed.  I just have several
7     friends in the--in law enforcement in Pampa and Miami and
8     Wheeler and all over.  They're good friends.
9          THE COURT:  And would that--
10         THE PANEL MEMBER:  No, it would not.
11         THE COURT:  It would not?  All right.
12         Anybody else?  Did I miss anybody?  Yes, ma'am.
13         PANEL MEMBER:  Joni Yara.  My brother-in-law is a--
14    at the police department in Perryton, and my nephew is at the
15    police department in Dumas.
16         THE COURT:  And would that in any way inhibit you?
17         THE PANEL MEMBER:  No.
18         THE COURT:  Okay.  Anybody else?  Did we miss
19    anybody?  Is that everybody?  Good.  Okay.  Thank you.
20         Have any of you ever served in the military?
21    Anybody?  Yes, sir.
22         PANEL MEMBER:  Bonner Green.
23         THE COURT:  What branch?
24         THE PANEL MEMBER:  United States Air Force.
25         THE COURT:  When?

1                    THE PANEL MEMBER:  '70 to '74.

2                    THE COURT:  Okay.  Thank you, sir.

3                    PANEL MEMBER:  Gary Billstrom.  I served in the Navy

4      from 1970 to 1972.

5                    THE COURT:  Okay, sir.  Anybody else?  Nobody else?

6      Okay.

7                    You will hear testimony from law enforcement

8      officers and agents.  Would you tend to believe the testimony

9      of such a government agent or an employee over the testimony of

10     a private individual merely because he is a government employee

11     or agent?  If you would, raise your hand.  Yes, sir.  You

12     would?

13                   PANEL MEMBER:  Yes.

14                   THE COURT:  Your name, please?

15                   THE PANEL MEMBER:  Gary Keeler.

16                   THE COURT:  Anybody else?  Anybody else?  Yes.  You

17     would, sir?

18                   PANEL MEMBER:  Robert Ventura.  Yes, sir.

19                   THE COURT:  You would believe an agent just because

20     he was an agent?

21                   THE PANEL MEMBER:  No, sir.

22                   THE COURT:  No?  Would you believe an agent over a

23     private individual just because he's an agent--

24                   THE PANEL MEMBER:  Yes, sir.

25                   THE COURT:  --or law enforcement?

1            THE PANEL MEMBER:  Yes, sir.

2            THE COURT:  Okay.  Your name again, please?

3            THE PANEL MEMBER:  Robert Ventura.

4            THE COURT:  I'm sorry.  Your number?  Do we know?

5            THE PANEL MEMBER:  38.

6            THE COURT:  38?  Oh, yes.

7            All right.  Anybody else?

8            This is not a sequestered jury.  We will start in

9      the morning at 9:00, and we will finish up at 5:00.  The

10     lawyers think the trial may last as long as a week.  I think it

11     will last five days, but say five, eight days at the most.  Are

12     there any business, social, or personal matter which would so

13     interfere with your concentration during this trial for that

14     period of time that you should not serve on a jury?  All right.

15     Yes, sir.  Your name again?

16            PANEL MEMBER:  Roy Reed.  I apologize.

17            THE COURT:  That's okay.  I'm going to ask you

18     later.

19            THE PANEL MEMBER:  I'm a self-employed guy--

20            THE COURT:  Okay.  I'm going to ask you later.

21     That's okay.

22            Anybody else?  Okay.

23            PANEL MEMBER:  Tim Huddleston.

24            THE COURT:  Give me a number, please.

25            THE PANEL MEMBER:  Number 28.

```
1              THE COURT:  48?

2              COURTROOM DEPUTY:  28.

3              THE COURT:  Mr. Huddleston, you have a problem?

4    Okay.  Who else?  All right.

5              PANEL MEMBER:  Steven Dancy, 49.

6              THE COURT:  All right.  Anybody else?

7              PANEL MEMBER:  Joni Yara, Number 50.

8              THE COURT:  Anybody else?

9              PANEL MEMBER:  Gary Keeler, 17.

10             THE COURT:  All right.  Anybody else?

11             PANEL MEMBER:  Carina Morales, 25.

12             THE COURT:  25?

13             PANEL MEMBER:  Sid Tuls, 19.

14             PANEL MEMBER:  Robert Ventura, Number 38.

15             PANEL MEMBER:  Mark Sorrels, Number--

16             THE COURT:  Wait, wait.  Let me do a note first.

17   Mr. Ventura?

18             COURTROOM DEPUTY:  38.

19             THE COURT:  Yes, sir?

20             PANEL MEMBER:  Mark Sorrels, Number 41.

21             THE COURT:  All right.  Anybody else?

22             PANEL MEMBER:  Kelly Lorenz, Number 24.

23             THE COURT:  Okay.  Anybody else?  Did I miss

24   anybody?  All right.  Thank you.

25             Think about this for a minute.  Suppose you were the
```

1    defendant in this case, or suppose you were representing the

2    government.  Can you think of any reason why you wouldn't want

3    someone just like you to be on the jury?

4              Do any of you have any personal knowledge at all

5    about the facts of this case?  All right.  Have any--  Oh, yes,

6    ma'am.

7              PANEL MEMBER:  I'm an avid reader, and so I read

8    what has been posted on the Internet--

9              THE COURT:  Okay.  Stop just a second.  You've read

10   about it?

11             THE PANEL MEMBER:  Yes, sir.

12             THE COURT:  And your name again, please?

13             THE PANEL MEMBER:  Elizabeth Benton.

14             THE COURT:  And I don't want you to tell me what

15   you've read.  I just want to ask you a few specific questions.

16             THE PANEL MEMBER:  Yes, sir.

17             THE COURT:  The source of your information is?

18             THE PANEL MEMBER:  Primarily amarillo.com.

19             THE COURT:  Okay.  And how many articles do you

20   think you've read?

21             THE PANEL MEMBER:  Just whatever has been posted

22   recently, so probably four, five maybe.

23             THE COURT:  Do you remember any of the specifics

24   about what you read?

25             THE PANEL MEMBER:  Well--

1          THE COURT:  Don't tell me what they are; just tell

2     me whether you--

3          THE PANEL MEMBER:  Yes, I do remember some

4     specifics.

5          THE COURT:  Okay.  Have you formed any opinion about

6     the guilt or innocence of the defendant?

7          THE PANEL MEMBER:  No, sir.  I find it interesting

8     to read about--

9          THE COURT:  Okay.  Would you be able, if you're

10    selected, to put that out of your mind and decide this case

11    solely on what you see and hear in this courtroom?

12         THE PANEL MEMBER:  I would do my very best.

13         THE COURT:  Can I get a yes or a no from you?

14         THE PANEL MEMBER:  That's a yes.

15         THE COURT:  Okay.  All right.  Anybody else?

16    Anybody else?  Your name, please, sir?

17         PANEL MEMBER:  William Garrett.

18         THE COURT:  And don't tell me what you've read; just

19    tell me where--what was the source of your information?

20         THE PANEL MEMBER:  Internet and TV.

21         THE COURT:  Okay.  And about how often have you had

22    occasion to read or hear about this case?

23         THE PANEL MEMBER:  Usually about twice a week, I

24    look on it.

25         THE COURT:  Okay.  And do you remember any of the--

1     don't tell me what they are--

2                 THE PANEL MEMBER:  Yes.

3                 THE COURT:  --any of the facts about the case?

4                 THE PANEL MEMBER:  Yes.

5                 THE COURT:  Have you formed an opinion about the

6     case?

7                 THE PANEL MEMBER:  Yes.

8                 THE COURT:  Would you then not be able to put that

9     aside and decide this case solely on what you see and hear in

10    this courtroom?

11                THE PANEL MEMBER:  Probably not.

12                THE COURT:  Okay.  And your number again, please,

13    sir?

14                THE PANEL MEMBER:  31.

15                THE COURT:  What?

16                THE PANEL MEMBER:  31.

17                THE COURT:  Anybody else?  Yes, ma'am.

18                PANEL MEMBER:  Joni Yara.

19                THE COURT:  All right.  Don't tell me about what

20    you've read now; just tell me, what's the source of your

21    information?

22                THE PANEL MEMBER:  The Amarillo Globe News and just

23    local Amarillo news stations.

24                THE COURT:  Okay.  About how many times have you

25    read about this?

1                    THE PANEL MEMBER:  Just twice recently, but I saw it

2     on the news when it happened.

3                    THE COURT:  Okay.  And do you remember anything

4     specific about the case?

5                    THE PANEL MEMBER:  Yes, yes.

6                    THE COURT:  Have you formed an opinion about the

7     case?

8                    THE PANEL MEMBER:  Yes.

9                    THE COURT:  So you think you could not take an oath

10    that you're going to decide this case based solely on what you

11    see and hear in this courtroom?

12                   THE PANEL MEMBER:  I feel that I could give him a

13    fair trial.  I mean--

14                   THE COURT:  Well, now, you know, I'll put it to you

15    this way.  You have to take an oath, and that oath says:  I

16    will decide this case based on what I see and hear in this

17    courtroom, and that's it, and the law as the judge gives it.

18    Could you, in conscience, take such an oath?

19                   THE PANEL MEMBER:  Yes, I could.

20                   THE COURT:  Okay.  Thank you.

21                   Anybody else?  Yes, sir.  Somebody--oh.  Your name?

22                   PANEL MEMBER:  Steven Dancy, 49.

23                   THE COURT:  Yes, sir.  Without telling me--just tell

24    me, what's the source of your information?

25                   THE PANEL MEMBER:  Amarillo TV station.

1                    THE COURT:  And how often have you seen anything

2     about that?

3                    THE PANEL MEMBER:  A couple of times.

4                    THE COURT:  And do you remember any of the

5     specifics?

6                    THE PANEL MEMBER:  Yes, sir.

7                    THE COURT:  And have you formed an opinion about the

8     case?

9                    THE PANEL MEMBER:  Yes, sir.

10                   THE COURT:  Well, could you put that aside and

11    decide this case based solely on the evidence that you hear and

12    see in this courtroom?

13                   THE PANEL MEMBER:  To be honest, no, sir, I

14    couldn't.

15                   THE COURT:  Your number again, please, sir?

16                   THE PANEL MEMBER:  49.

17                   THE COURT:  All right.  Yes, ma'am?

18                   PANEL MEMBER:  Sherry Hooten.

19                   THE COURT:  The source of your information?

20                   THE PANEL MEMBER:  Amarillo newspaper.

21                   THE COURT:  And have you read much about the case?

22                   THE PANEL MEMBER:  Maybe two articles.

23                   THE COURT:  Do you remember much about it?

24                   THE PANEL MEMBER:  General information.

25                   THE COURT:  And have you formed an opinion about the

1    case?

2            THE PANEL MEMBER:  No, sir.

3            THE COURT:  Would you be able to put aside anything

4    that you read and decide the case solely on what you see and

5    hear--

6            THE PANEL MEMBER:  Yes.

7            THE COURT:  --in this courtroom and the law as I

8    give it?

9            THE PANEL MEMBER:  Yes, sir.

10            THE COURT:  Okay.  Anybody else?  Yes, sir.

11            PANEL MEMBER:  Caroll White.  Just the Internet, on

12    the Globe News yesterday afternoon.

13            THE COURT:  Okay.  And have you formed an opinion

14    about the case?

15            THE PANEL MEMBER:  No, sir.

16            THE COURT:  Could you put aside everything that

17    you've read or heard about it and decide the case on what you

18    see and hear in this courtroom?

19            THE PANEL MEMBER:  I believe so.

20            THE COURT:  Could I get a yes or a no?

21            THE PANEL MEMBER:  Yes, sir.

22            THE COURT:  Okay.  Thank you.

23            Anybody else?  Yes, ma'am.

24            PANEL MEMBER:  Kathy Norris.  And I had seen it on

25    TV and read it in the paper.

1                    THE COURT:  Okay.  And have you--

2                    THE PANEL MEMBER:  I don't remember--

3                    THE COURT:  How much--do you remember much about the

4      specifics?

5                    THE PANEL MEMBER:  No, not really.

6                    THE COURT:  And have you formed an opinion about the

7      case?

8                    THE PANEL MEMBER:  I have.  I have.

9                    THE COURT:  The question is, could you put that

10     aside and decide this case solely on what you see and hear in

11     this courtroom and the law as I give it?

12                   THE PANEL MEMBER:  I would certainly try, but I

13     can't promise you.

14                   THE COURT:  Well, I have to have a promise, because

15     you're going to have to take an oath.

16                   THE PANEL MEMBER:  Yes, I would--I would try, yes.

17                   THE COURT:  No.  Yes, you would do it, or no, you

18     can't?

19                   THE PANEL MEMBER:  Yes, I would do it.

20                   THE COURT:  Okay.  Thank you.

21                   Did I miss anybody?  Yes, back here.

22                   PANEL MEMBER:  Mark Sorrels, Number 41.

23                   THE COURT:  All right.  What's the source of your

24     information?

25                   THE PANEL MEMBER:  Amarillo newspaper.

1                    THE COURT:  And do you remember much of the

2      specifics of the case?

3                    THE PANEL MEMBER:  Just general details.

4                    THE COURT:  Well, could you put that aside and

5      decide the case solely on what you see and hear in this

6      courtroom?

7                    THE PANEL MEMBER:  Yes.  Yes.

8                    THE COURT:  Okay.  Thank you.

9                    Did I miss anybody?

10                   Do you know of any other reason that I haven't

11     covered that would affect your ability to be a fair and

12     unbiased juror in this case?  Anybody?

13                   All right.  I usually let the lawyers ask you some

14     questions, questions about yourself.  So Mr. Haag?

15                   MR. HAAG:  Thank you, Your Honor.  With the court's

16     permission, Ms. Williams will be doing the voir dire.

17                   THE COURT:  I beg your pardon?

18                   MR. HAAG:  With your permission, Your Honor,

19     Ms. Williams will be doing the voir dire.

20                   THE COURT:  All right.  Ms. Williams?

21                   MS. WILLIAMS:  Good morning.  It is still morning.

22     You may feel like you've been here all day, but it is still

23     morning.  I will just have a few questions for you.  Some of

24     the ground that--  Can everyone hear me okay?  I'm going to see

25     nods.

1          Some of the ground that I will cover, the judge went

2     over with you a little bit.  Some of that, I want to go into a

3     little more in detail.  I believe all of you realize that this

4     is an important and a serious case, so we want to make sure

5     that the people that are sitting here in the jury box are the

6     fairest jury that we can get for both sides.  Not only--

7          THE COURT:  Okay.  Don't argue your case.  Just--you

8     can ask individual questions--

9          PANEL MEMBER:  We can't hear.

10         THE COURT:  --if you want to know something about

11    the individuals--

12         PANEL MEMBER:  We can't hear him.

13         THE COURT:  You can't hear me?

14         THE PANEL MEMBER:  No.

15         THE COURT:  Okay.  I just instructed her just to ask

16    questions about--that she wants to know about you individually;

17    not the time for opening statement.

18         MS. WILLIAMS:  When you came to the courthouse this

19    morning, was anyone nervous?  Anyone?  I see four hands.

20    Anyone more than--  Anyone nervous?  Anyone still nervous?  All

21    right.

22         Is there anyone on the jury panel who has ever

23    testified in a civil or criminal case before?  Let's see.  On

24    the first row?

25         PANEL MEMBER:  Roberta Godsey.

1          MS. WILLIAMS:  I'm sorry?  Ms. Godsey?

2          THE PANEL MEMBER:  Yes.

3          MS. WILLIAMS:  You have testified before?

4          THE PANEL MEMBER:  Yes.  I'm a CPS investigator, and

5    I testified in relation to CPS cases.

6          MS. WILLIAMS:  When you testify, are you nervous?

7          THE PANEL MEMBER:  No, not usually.  I've worked for

8    the agency for eleven years, so no.

9          MS. WILLIAMS:  Back when you first started, did you

10   get nervous?

11         THE PANEL MEMBER:  Oh, of course, yeah.

12         MS. WILLIAMS:  About how many times do you think

13   you've testified?

14         THE PANEL MEMBER:  Oh, goodness.  In eleven years,

15   probably 30, 40 times.

16         MS. WILLIAMS:  All right.  Thank you very much.

17         Just a general question.  Does anyone have any

18   difficulty sitting in judgment of someone else due to your

19   religious, moral, or social reasons?  Anyone believe that they

20   could not sit in judgment or could not make a decision one way

21   or the other in this case?  I see no hands.

22         There were a couple of people that said that they

23   would believe law enforcement over other witnesses, and I'm

24   paraphrasing here.  I believe Number 17, Mr. Keeler--

25         THE COURT:  The ones who said that, we're going to

1    talk to individually.

2              MS. WILLIAMS:  Oh.  Thank you, Your Honor.

3              I believe the--  My question to you is, do you

4    understand that persons who are arrested in the United States,

5    regardless of their citizenship or immigration status, legal or

6    illegal, have the right under our Constitution--

7              THE COURT:  Well, I think I have sufficiently

8    explained that, ma'am.

9              MS. WILLIAMS:  Yes, Your Honor.

10             Is there anyone on the jury panel that knows any

11   Muslims?  Anyone on the jury panel that knows any Muslims?

12   Yes, ma'am.  Tell us your name.

13             PANEL MEMBER:  Elizabeth Moore.  Elizabeth Moore.

14             MS. WILLIAMS:  Okay.  Can you tell me what number

15   you are?

16             THE PANEL MEMBER:  44, I believe.

17             MS. WILLIAMS:  Yes, 44.  How do you know this person

18   or persons?

19             THE PANEL MEMBER:  He's a professor at West Texas

20   A&M University.

21             MS. WILLIAMS:  How long have you known him?

22             THE PANEL MEMBER:  Six or seven years.

23             MS. WILLIAMS:  Are you a close associate with this

24   person?

25             THE PANEL MEMBER:  No, not close.

1          MS. WILLIAMS:  And while you're standing up, I also

2  wanted to ask you--  You mentioned that you were a part-time

3  instructor.  What do you teach there?

4          THE PANEL MEMBER:  I teach in the Department of

5  Agriculture.  I teach horticulture.

6          MS. WILLIAMS:  Thank you.

7          There was someone else on this side.  Yes, ma'am.

8          PANEL MEMBER:  Pamela Barrett, and I've been a high

9  school teacher for 25 years, so I have lots of students.

10          MS. WILLIAMS:  Okay.  You have lots of students, and

11  some of those are of the Muslim faith?

12          THE PANEL MEMBER:  Oh, yeah.

13          MS. WILLIAMS:  All right.  And have you been

14  involved with the students, as well as with their parents, or--

15          THE PANEL MEMBER:  Mainly just the students.  Some

16  parents though.

17          MS. WILLIAMS:  Okay.  Would you say you had a close

18  association with those folks?

19          THE PANEL MEMBER:  The students, yeah.

20          MS. WILLIAMS:  All right.  Thank you very much.

21          Anyone else on this side?  Yes, ma'am.

22  Ms. Jackson--  Oh, I'm sorry.

23          PANEL MEMBER:  Sarah Victor, Number 3.

24          MS. WILLIAMS:  Yes.

25          THE PANEL MEMBER:  They are my co-workers.

 1              MS. WILLIAMS:  Okay.

 2              THE PANEL MEMBER:  I've known them for about--a

 3     little over a year, and I'd say I get along with them pretty

 4     well.

 5              MS. WILLIAMS:  Okay.  Close friend or acquaintance?

 6              THE PANEL MEMBER:  We're--oh, yeah, we're definitely

 7     friends.

 8              MS. WILLIAMS:  All right.  Thank you very much.

 9              PANEL MEMBER:  Shannon Jackson.  Just one of my

10     daughter's classmates.

11              MS. WILLIAMS:  Do you have a close association with

12     this young woman or her family?

13              THE PANEL MEMBER:  No, not really.  I sub, and he's

14     a friend of hers.

15              MS. WILLIAMS:  Oh, all right.  Thank you very much.

16              Anyone to my right?  We have several.

17              PANEL MEMBER:  Sherry Hooten, Number 33.  At my job,

18     I previously did workmen's comp and family medical leave, and

19     two of our employees that I have dealt with, they are

20     acquaintances that are of the Muslim faith.

21              MS. WILLIAMS:  All right.  Thank you very much.

22              THE PANEL MEMBER:  You're welcome.

23              PANEL MEMBER:  Are you asking personally, like

24     friends, or just like if you work with somebody or barely know

25     them?

1          MS. WILLIAMS:  I'm asking all of that.

2          THE PANEL MEMBER:  Well, I don't judge, so I'm not

3     really sure.  I just want to say I have met somebody like that,

4     if that makes sense.

5          MS. WILLIAMS:  Are you close with anyone of the

6     Muslim faith?

7          THE PANEL MEMBER:  No, ma'am.

8          MS. WILLIAMS:  Thank you.

9          Anyone else on that side?  All right.  Thank you

10    very much.

11         Is there anyone on the jury panel that has a

12    background or some kind of specialized knowledge in the field

13    of chemistry?  Anyone on the jury panel have a specialized

14    knowledge in the field of chemistry?

15         Is there anyone on the jury panel that has a

16    specialized knowledge in the area of explosives?  Anyone?  All

17    right.

18         And we may have several hands on this one.  Is there

19    anyone who has specialized knowledge in computers?

20    Mr. McDonald?

21         PANEL MEMBER:  Kevin McDonald.  I've been working on

22    computers and networks ever since--oh, I don't know, since I

23    was a kid.  Played games, been a network administrator for

24    Amarillo Diagnostic Clinic here in town, or was for five and a

25    half years, and I worked in the IT business.  Still do website

1   development, that kind of stuff.  I live on a computer, so yes.

2          MS. WILLIAMS:  Yes, sir.  Have you ever been

3   involved in the area of computer forensics?

4          THE PANEL MEMBER:  As far as recovering data for

5   customers, yes.  Hard drive crashes things like that, yes.

6          MS. WILLIAMS:  If there are witnesses that testify

7   as experts in the area of computers and computer forensics,

8   would you be able to set aside the knowledge that you have and

9   base any verdict that you would make on the evidence that you

10  hear from those experts?

11         THE PANEL MEMBER:  Certainly.

12         MS. WILLIAMS:  Thank you.

13         PANEL MEMBER:  Pam Barrett.  One of my degrees is

14  computer literacy.  And I'm mainly more with teaching students

15  computer, and I teach online, like right now for the Texas

16  Virtual School Network, so writing some of the programs, but no

17  knowledge of forensics.

18         MS. WILLIAMS:  All right.  And any knowledge that

19  you would have about computers, would you be able to set the

20  knowledge you have aside and base any verdict that you--

21         THE PANEL MEMBER:  Absolutely.

22         MS. WILLIAMS:  --render only on the evidence that

23  you hear here in the courtroom?

24         THE PANEL MEMBER:  Yes.

25         MS. WILLIAMS:  Thank you.

1              PANEL MEMBER:  Vernon Noble, Number 18.  I've been

2    in IT for about twelve years now, and I have an associates in

3    applied science in software systems networking.  I have some

4    Microsoft certifications and Comp certifications.

5              MS. WILLIAMS:  Have you been involved in forensic

6    examinations of computers?

7              THE PANEL MEMBER:  Recovering data and stuff, yes.

8              MS. WILLIAMS:  Any knowledge that you might have

9    about computers, would you be able to set that aside and listen

10   to the experts from the witness stand and base your verdict

11   only on the evidence and the testimony that you hear in the

12   courtroom this week?

13             THE PANEL MEMBER:  Yes, ma'am.

14             MS. WILLIAMS:  Thank you.

15             PANEL MEMBER:  Evelyn Jenkins, 47.  I'm an IMS

16   manager at my job, so we support software and computers for our

17   school districts here in the Texas Panhandle, so a little bit

18   of knowledge.

19             MS. WILLIAMS:  A little bit of knowledge about

20   computers?

21             THE PANEL MEMBER:  Yes, ma'am.

22             MS. WILLIAMS:  Anything about forensic work on

23   computers?

24             THE PANEL MEMBER:  Not really.  Staff takes care of

25   that.

1             MS. WILLIAMS:   If you were to hear someone testify

2    from the witness stand as an expert regarding computers,

3    computer forensics, et cetera, would you be able to set aside

4    what you know and listen to them fairly and impartially in

5    making your decision?

6             THE PANEL MEMBER:   Yes, ma'am.   Yes, ma'am.

7             MS. WILLIAMS:   Thank you.

8             Did I miss anyone?   All right.

9             Is there anyone on the jury panel that has ever

10   traveled to any Middle Eastern countries?   Saudi Arabia, Iraq,

11   Iran, any of those?   Mr. Noble?

12            PANEL MEMBER:   Yes.   Vernon Noble, Number 18.   Now

13   that I think about it, it was probably Far East, Malaysia,

14   Korea, Central America, South America.

15            MS. WILLIAMS:   Those sound pretty Far East to me.

16            THE PANEL MEMBER:   Yeah.

17            MS. WILLIAMS:   All right.   Anybody travel to the

18   Middle East?

19            Is there anyone on the jury panel that speaks or

20   understands the Arabic language?

21            The judge spoke to you quite a bit, asked you some

22   questions about being fair and impartial.   Is there anyone on

23   the jury panel who believes that they could not be a fair and

24   impartial juror in this case?   Anyone on the jury panel, other

25   than the ones that have already spoken?

1           Will you be going over that more closely with them,

2   Your Honor?

3           THE COURT:  Yes.

4           MS. WILLIAMS:  Okay.

5           Is there anyone--  And I know the judge has gone

6   over with you some other issues that you might have.  Before I

7   sit down, I want to make sure that I ask, is there anyone who

8   has sat there and thought, if only they would ask me this

9   question or ask me that question, I need to give them some

10  information.  Is there anyone on the jury panel that hasn't

11  been asked the right question yet?

12          THE COURT:  Well--

13          PANEL MEMBER:  Gary Keeler, Number 17, yes.

14          MS. WILLIAMS:  Yes, sir.  And what is it that--  If

15  it's an opinion about the case or anything the judge has

16  already asked you, don't tell us that, but is there something

17  that you believe that we need to know in selecting the jury?

18          THE PANEL MEMBER:  Yes, and I would rather be asked

19  in private about it.

20          MS. WILLIAMS:  All right.  Thank you.

21          There was someone else.  Yes, Mr. Dancy?

22          PANEL MEMBER:  Yes, Steve Dancy, 49.  I have an

23  issue with--

24          THE COURT:  Okay.  Wait a second.  Oh, you have an

25  issue with what?  You've already indicated you have a problem

1    serving.  Right?

2              THE PANEL MEMBER:  Yes.

3              THE COURT:  That's okay.  Thank you.

4              MS. WILLIAMS:  Thank you for your time.

5              MR. COGDELL:  May it please the court?

6              THE COURT:  Yes, sir, Mr. Cogdell.

7              MR. COGDELL:  Judge, if it's okay, I'm going to

8    stand here, and I think y'all will be able to hear me.  Can

9    anyone--I don't want to do what he did when he was young.  Can

10   everybody hear me okay?  All right.

11             Judge Walter was nice enough to have you share a

12   little bit about yourself.  I think it's only fair that I give

13   you the 30-second spiel on me.  I live at home with my wife,

14   with a 16-year-old son.  We have a dog--we have two dogs.  I'm

15   a lawyer obviously.  My wife works in our--

16             THE COURT:  Okay, Mr. Cogdell.  Let's get to your

17   questions.

18             MR. COGDELL:  Okay.

19             Would all of y'all generally agree with me that each

20   of us has some sort of bias or prejudice that's just--we all

21   have feelings about different types of cases, different types

22   of people, different types of allegations.  I think we react to

23   them individually.  Okay?  Here's the object of the exercise.

24   We want to make sure that you are the right juror in this case.

25   Okay?  In this case.

1    How many of you, before you came in here, knew that

2  this case was--involved the allegation of attempted use of a

3  weapon of mass destruction?  A small percentage.  Okay.  I

4  think the judge has talked to y'all about that.

5    Knowing that this case involves the allegation of

6  attempted use of a weapon of mass destruction, I want you to

7  simmer on that for a minute.  Okay?  Juror Number 1, how do you

8  react to that allegation, when you hear the words "attempted

9  use of a--"

10    THE COURT:  Well, Mr. Cogdell, I don't think I'm

11  going to let you do that, because I've already told all of them

12  that they will be taking an oath, and that oath will say, "I

13  will decide this case based solely on what I hear and see in

14  this courtroom and the law as you give it," and I'm not going

15  to let anything else interfere with that, so--

16    MR. COGDELL:  Let me see if I can ask it--

17    JURY CLERK:  Judge, I have a juror who has to leave,

18  for a second, the room, please.

19    THE COURT:  Okay.  Is that okay if we proceed, or do

20  we want to wait for him to come back?

21    MR. COGDELL:  Either way, Your Honor.

22    THE COURT:  Okay.  Let's wait till he--  Let's

23  proceed then, if that's all right.

24    MR. COGDELL:  Okay.

25    Let me ask a similar question in maybe a little bit

1    different way.  Is there anybody on the panel that is concerned

2    that it might be harder to, for example--  Mr. Aldawsari, stand

3    up.

4         (DEFENDANT STANDS)

5              MR. COGDELL:  That it might be harder--given the

6    nature of the allegation, being attempted use of a weapon of

7    mass destruction, that it might be harder to presume him

8    innocent than it would be if he was charged with some other

9    type of case?  Anybody feel that way?  Okay.  We've talked to

10   you about it.  Anybody else?  Anybody on the first nine have a

11   concern that, because of the nature of the allegation, it might

12   be harder to presume him innocent?

13             Second nine over here to my left, second row, no

14   issues?  Second row to my right, no issues?  Yes, ma'am.  Tell

15   us.

16             THE COURT:  Wait just a second.  Your name, please?

17             PANEL MEMBER:  Oma Zimmerman.

18             THE COURT:  And your number?

19             THE PANEL MEMBER:  26.  Unfortunately, I--

20             THE COURT:  No, that's okay.  We're going to talk to

21   you individually.

22             MR. COGDELL:  Okay.  Anybody else have a similar

23   concern, given the nature of the allegation?  Yes, sir.  Your

24   name and number?

25             PANEL MEMBER:  Mark Sorrels, Number 41.

1               MR. COGDELL:  Judge, I take it you want us to--

2               THE COURT:  I already got him.

3               MR. COGDELL:  Okay.

4               Mr. Sorrels, do you have relatives in Houston, by

5    any chance?

6               THE PANEL MEMBER:  No.

7               MR. COGDELL:  Okay.  There's a very good lawyer with

8    your same last name.

9               Anybody else on this side of the room?  On this side

10   of the room?  Yes, sir, we've talked to you.

11              Kind of a parallel question.  He's a Muslim.  Okay?

12   He's a Saudi Arabian citizen.  He's not from around here

13   originally.  Okay?  When any of you hear the words "Saudi

14   Arabian citizen," does that spark any sort of negative

15   connotation or inference?

16              Let me ask it another way.  I'm going to challenge

17   y'all a little bit.  If you were getting on a plane and the guy

18   sitting next to you on the left or the right was a Saudi

19   citizen, would you think kind of hard about that?  Number 10,

20   11--12, got you nodding.  Help me with what you're thinking.

21              PANEL MEMBER:  Are you speaking to me?

22              MR. COGDELL:  Yes, sir.

23              THE PANEL MEMBER:  What was your question, please?

24              MR. COGDELL:  If you were getting ready to take an

25   airplane flight--

1           THE PANEL MEMBER:  Oh, okay.

2           THE COURT:  No, don't--  Wait.  The question was

3    again, Mr. Cogdell?

4           MR. COGDELL:  It was, does it spark a negative

5    inference with you?

6           THE COURT:  And does it?  Just yes or no.

7           PANEL MEMBER:  No, it wouldn't.

8           MR. COGDELL:  Does it spark a negative--just a

9    little bitty negative inference with anybody?  Number--  Let's

10   see.  We've got 9, 18, 20--

11          PANEL MEMBER:  21.

12          MR. COGDELL:  21.  And I think Number 19, you're

13   telling us yes, it does.  And Number 21, you're telling us yes,

14   it does.

15          THE PANEL MEMBER:  It did at one time.  After--

16          THE COURT:  That's okay.  That's okay.

17          THE PANEL MEMBER:  --after 9/11--

18          THE COURT:  Who was that, now?

19          MR. COGDELL:  Number 21, Your Honor.

20          Does it still, with you?

21          THE PANEL MEMBER:  No.

22          MR. COGDELL:  Okay.  Number 19, I'm assuming that's

23   still the current--

24          PANEL MEMBER:  Yes.

25          MR. COGDELL:  Without getting into it?  And we'll

1    talk to you up there.

2           Anybody else have--yes, sir, we got you--a negative

3    inference when we hear the phrase or hear the words "Saudi

4    Arabian"?  Okay.

5           Muslim.  Counsel asked several people if any of you

6    know any Muslims.  All right.  Good question.  I assume most us

7    are probably members of the Christian faith.  Not all, but

8    most.  Him being a Muslim or following the Islamic faith, does

9    that raise any issue with any of you that maybe we need to talk

10   about?  Okay.  Number--

11          PANEL MEMBER:  6.

12          MR. COGDELL:  --6?

13          You're going to be hearing testimony about the

14   differences, I think, in religion and the faith to some extent.

15   Anybody else other than Number 6 that--

16          THE COURT:  Probably not, Mr. Cogdell, but--

17          MR. COGDELL:  Maybe?

18          THE COURT:  --but go ahead.

19          MR. COGDELL:  Maybe I'll go with that one.  Thank

20   you.

21          THE COURT:  All right.

22          MR. COGDELL:  Anybody else, other than Number 6,

23   believe that following the Islamic faith or being a Muslim

24   might be something that you need to discuss or want to discuss

25   at the bench?  Yes, sir, we've already got you.  You're

1      Number 17.  Right?

2                We've got another--Number 19, same Muslim, Islamic

3      issues?  Anybody else on that issue?

4                Let me just ask sort of a--oh, a generic question.

5      Knowing that it is a case involving the allegation of attempted

6      use of a weapon of mass destruction, knowing that he's a Saudi

7      citizen, knowing that he follows the Islamic faith and is a

8      Muslim, when you consider all those factors, are any of you

9      reaching a tipping point in your own mind where you're

10     thinking, maybe this isn't the right case for me to be the kind

11     of fair and impartial juror I want to be, when you consider all

12     those things together?  Or any of you get to the point where

13     you think, you're asking me to presume him innocent--

14               MS. WILLIAMS:  Your Honor, I'm going to object to

15     this line of questioning.

16               THE COURT:  Yes.  You're arguing your case,

17     Mr. Cogdell.

18               A few more minutes.

19               MR. COGDELL:  Okay.

20               THE COURT:  I think we've pretty well exhausted--

21               MR. COGDELL:  Okay.

22               The right to remain silent.  Do we all understand

23     that?  Does anybody have a specific problem with the right to

24     remain silent given these accusations and given the awareness

25     of things we've just discussed?

1              THE COURT:  I will instruct you that--if

2    appropriate, that no inference whatsoever can be drawn from the

3    election of a defendant not to testify.  If you have a problem

4    with that, raise your hand.  Okay.

5              MR. COGDELL:  Of course, that is absolutely a law.

6    The question is, I'm trying to--trying; I'm just not articulate

7    enough to ask it--is it harder to apply that instruction in

8    this case than it would be in other cases?  Do you follow me?

9    Anybody feel that way?

10             All right.  Easy questions.  How many members of--

11   how many members of the National Rifle Association do we have

12   here?  Raise your hand.  Okay.  Number--tell us your number.

13             PANEL MEMBER:  1.

14             PANEL MEMBER:  6.

15             MR. COGDELL:  Over here?

16             PANEL MEMBER:  14.

17             MR. COGDELL:  14.  Back over here, NRA members?  You

18   are Number 10.  Right?

19             PANEL MEMBER:  10.

20             PANEL MEMBER:  28.

21             MR. COGDELL:  28.  Back here?

22             PANEL MEMBER:  49.

23             MR. COGDELL:  Okay.

24             PANEL MEMBER:  46.

25             MR. COGDELL:  46?

1          THE PANEL MEMBER:  Not currently, but I used to be.

2          MR. COGDELL:  You're recovered.  Okay.

3          How many handgun owners?  Probably easier to ask not

4    how many handgun owners, don't have handguns.

5          All right.  Lawyers.  Anybody have a close--  The

6    judge talked to you and counsel talked to you about law

7    enforcement friends and relatives.  Any of you unfortunate

8    enough to have any lawyers that are friends or relatives?

9    First row, over here.  Number 10, you do?  Who is that person?

10          PANEL MEMBER:  Tommy Green.

11          MR. COGDELL:  Okay.

12          THE PANEL MEMBER:  In Houston.

13          MR. COGDELL:  Okay.  What does Tommy Green do?

14          THE PANEL MEMBER:  He's a lawyer.

15          MR. COGDELL:  Okay.  What kind of litigation?

16          THE PANEL MEMBER:  I don't even know.

17          MR. COGDELL:  Okay.  Anybody else have a friend or

18    relative that's a lawyer?  Back row, or second row back here?

19          PANEL MEMBER:  Kathy Norris.

20          MR. COGDELL:  And what's your relation to her?

21          THE PANEL MEMBER:  It's a him.  He's a trial lawyer

22    in oil and gas.

23          MR. COGDELL:  What's the first name?

24          THE PANEL MEMBER:  His name is Jody Sheets.

25          MR. COGDELL:  Oh, I thought you said his name was

1    Kathy Norris.  You're Kathy Norris.

2              THE PANEL MEMBER:  I was married to him--

3              MR. COGDELL:  You were married to him?

4              THE PANEL MEMBER:  --about 25 years ago.

5              MR. COGDELL:  Okay.

6              THE PANEL MEMBER:  We're not anymore.

7              MR. COGDELL:  Okay.  Anybody else?  Yes, ma'am.

8              PANEL MEMBER:  Sherry Hooten.  I have a cousin

9    that's a lawyer.

10             MR. COGDELL:  What kind of law?

11             THE PANEL MEMBER:  I'm not sure.  He's not a close

12   cousin, but--

13             MR. COGDELL:  Okay.  Down here, anybody else?

14             PANEL MEMBER:  Rex Sharber.  Joe Marr Wilson, he's a

15   criminal justice--or criminal attorney.

16             MR. COGDELL:  Okay.  Criminal defense lawyer?

17             Number 18?  I think we've--I think we've got you on

18   some other issues, but while I've got you, who is it?

19             PANEL MEMBER:  Vernon Noble, Number 18.

20             MR. COGDELL:  Okay.  All right.  And the

21   relationship?

22             THE PANEL MEMBER:  Oh, the--  Sorry.  He's a judge.

23             MR. COGDELL:  Sir?

24             THE PANEL MEMBER:  His name is Phil Vanderpool.

25             MR. COGDELL:  Okay.  Who else?

1          PANEL MEMBER:  Joni Yara, Number 50.  I have a

2     cousin that's an attorney and a very, very close friend who's

3     an attorney.

4          MR. COGDELL:  Okay.  Here in Potter County?

5          THE PANEL MEMBER:  No.

6          MR. COGDELL:  What county?

7          THE PANEL MEMBER:  In Lipscomb County.

8          MR. COGDELL:  I'm sorry?

9          THE PANEL MEMBER:  Lipscomb County.

10         MR. COGDELL:  Gotcha.

11         PANEL MEMBER:  Kevin Blodgett, 46.  I have a

12    brother-in-law that's an attorney.

13         MR. COGDELL:  What type?

14         THE PANEL MEMBER:  I'm not sure.

15         MR. COGDELL:  Okay.  Anybody else over here?  Our

16    decorator, you have a--

17         PANEL MEMBER:  Yes, sir.  Elizabeth Benton,

18    Number 40.  My business partner's son-in-law is an attorney in

19    Wichita Falls.  And also, Marty Rowley is a personal friend,

20    and I decorate for him, his offices around town.

21         MR. COGDELL:  Okay.  Yes, ma'am?

22         PANEL MEMBER:  Sharon Weisgerber, 23.  I've got a

23    nephew in El Paso that's a criminal lawyer.

24         MR. COGDELL:  Okay.

25         PANEL MEMBER:  Mark Sorrels, Number 41.  I have four

1    friends that are attorneys.

2              MR. COGDELL:  Okay.  Different types of law, I take

3    it, Mr. Sorrels?

4              THE PANEL MEMBER:  Yeah, a little bit of everything.

5              MR. COGDELL:  Okay.  Anybody else back there?

6              PANEL MEMBER:  Robert Ventura, Number 38.  I have a

7    friend that's an attorney in Amarillo.

8              MR. COGDELL:  What type of law?

9              THE PANEL MEMBER:  I'm not sure.  And prior to my

10   wife getting her teaching degree, she used to work for the

11   County DA.

12             MR. COGDELL:  Okay.  Anybody else on this side of

13   the room?

14             PANEL MEMBER:  Elizabeth Moore, Number 44.  My dad

15   is a lawyer, but he's also the district judge over Hutchinson,

16   Hansford, and Ochiltree counties.

17             MR. COGDELL:  Okay.  Now, your dad being a district

18   judge--

19             THE PANEL MEMBER:  Yes, sir.

20             MR. COGDELL:  --obviously he sits in judgments on

21   people, probably sentences people from time to time and the

22   like.  Does that matter at all in terms of your perception or

23   your ability to be the kind of fair and impartial juror you

24   want to be in this case?

25             THE PANEL MEMBER:  No.

1            MR. COGDELL:  Any influence one way or the other?

2            THE PANEL MEMBER:  No.

3            MR. COGDELL:  Okay.  Anybody else on the lawyers?

4            May I have just one minute, Your Honor?

5            THE COURT:  All right.

6            MR. COGDELL:  Just one minute.

7            THE COURT:  Yeah, one more question.

8       (PAUSE)

9            MR. COGDELL:  Texas Tech.  Anybody have any close

10     association with Texas Tech?  Yes, ma'am.

11           PANEL MEMBER:  I attended.

12           MR. COGDELL:  Okay.  Beyond that?

13           THE PANEL MEMBER:  No.

14           MR. COGDELL:  Anybody else?

15           PANEL MEMBER:  Number 19.  My daughter-in-law

16     graduated there.

17           MR. COGDELL:  Okay.  Anybody else?

18           THE PANEL MEMBER:  41.  Same thing.  My

19     daughter-in-law graduated there.

20           MR. COGDELL:  Okay.  And when I say "close

21     association," let me tighten that question up a bit.  Other

22     than having a friend or a daughter or relative that went there,

23     is there somebody that's an active supporter, active in the

24     booster club, regular contributor or donator to that school or

25     that program?  Yes, sir.  You?

1          PANEL MEMBER:  Number--no, my son.

2          MR. COGDELL:  Your son?  He is?

3          THE PANEL MEMBER:  Yes, sir.

4          MR. COGDELL:  Okay.  Anybody else?  Yes, ma'am.

5          PANEL MEMBER:  I have a brother that's a graduate

6    and also in the booster.

7          MR. COGDELL:  And your name and number?

8          THE PANEL MEMBER:  Sherry Hooten.

9          MR. COGDELL:  Okay.

10         Yes, ma'am, if you'd stand up--

11         PANEL MEMBER:  My stepson.

12         MR. COGDELL:  Stand up and give us your name.

13         THE PANEL MEMBER:  Elizabeth Benton, Number 40.  My

14   stepson graduated from there, got his master's from there, and

15   is also very involved.

16         MR. COGDELL:  Okay.  Financially?

17         THE PANEL MEMBER:  Financially.

18         MR. COGDELL:  Okay.

19         THE PANEL MEMBER:  He's in the oil industry.  He's

20   very involved.

21         MR. COGDELL:  They like his involvement, do they?

22         THE PANEL MEMBER:  They do.

23         MR. COGDELL:  Okay.  Anybody else on the Texas Tech

24   issue?

25         Okay.  It's been a long day.  It's going to continue

1    to be a long day.  Thank you so much for your patience.  All of

2    us greatly appreciate it.

3              Thank you, Your Honor.

4              THE COURT:  Ladies and gentlemen, what I would like

5    from you is 10 minutes' indulgence.  If y'all will just stay

6    seated there in your place for 10 minutes.  If you need to use

7    the restroom, then certainly go and do so and--but come back

8    and sit there.

9              I would like to see the lawyers, or at least, say,

10   one on each side, and the court reporter and the courtroom

11   deputy in my chambers, please.

12   ----------------------------------------

13     (IN CHAMBERS)

14             THE COURT:  Have you got your notes with you?  Okay.

15   Have a seat.  Be comfortable.

16             Here are the people that I have that we're going to

17   talk about individually:  Number 6, Fatheree, who has a

18   problem, has an issue.  Number 17, Mr. Keeler, who has a

19   problem.  Number 19, Mr. Tuls, who has issues and problems.

20   Lorenz, Number 24, who has a problem.  Morales, who has a

21   problem; that's Number 25.  26, Zimmerman, has a problem.  28,

22   Huddleston, has a problem.  31 has formed an opinion.  38,

23   Ventura, has a problem and would believe an agent.  And 41,

24   Sorrels, who has an issue and a problem.  And 44, who has a

25   child that she takes care of that's under ten.  Reed,

1    Number 48, has a problem.  Dancy, Number 49, has a problem.

2    And Yara, Number 50, has a problem.

3              Now, let me count those again, but I think there are

4    thirteen of them that have a problem.

5              LAW CLERK:  Fourteen.

6              THE COURT:  All right.  Fourteen that have a

7    problem.

8              All right.  We have fifty-three.  Let's take those

9    fourteen out of it.  That leaves us thirty-nine.  We need

10   fourteen for the jury.  That leaves us twenty-five.  We have

11   sixteen challenges for cause.  That leaves us nine--I mean for

12   your peremptory challenges.  That leaves us nine.  You have two

13   more for the alternates.  That leaves us seven.  I can let

14   everybody go that's got a problem and we still have enough

15   potential jurors, and I propose we do exactly that.

16             MR. COGDELL:  Works for me, Judge.

17             MS. WILLIAMS:  That's fine, Your Honor.

18             MR. COGDELL:  My math right?  We have fourteen with

19   a problem.  We're still south of blowing the panel even, but

20   we've got--

21             THE COURT:  We still have seven--or five.

22             MR. COGDELL:  I think we may have five left.

23             THE COURT:  Five left no matter what, even if

24   there's no double strikes.

25             MR. COGDELL:  Yes, sir.  I'm fine with that.

1          THE COURT:  Well, all right.  Now, I propose going

2     in there and I'm going to excuse everybody with a problem and

3     tell them to leave, and then I'm going to give them--  How long

4     will it take you to give me your ten?

5          MR. COGDELL:  30 minutes.

6          THE COURT:  Suppose I let the rest of them go for

7     lunch.

8          MR. COGDELL:  That's fine.  Perfect.

9          THE COURT:  With the instruction to come back--  Do

10    I need to send them back down to the jury room once they are

11    excused or just tell them they can leave?

12         COURTROOM DEPUTY:  They can leave as long as you, of

13    course, say them by name so the jury clerk can get their name.

14         THE COURT:  I want y'all to follow me very

15    carefully--

16         MR. COGDELL:  Just for my--I'm assuming we are still

17    starting tomorrow with the opening and the evidence?

18         THE COURT:  I think that's probably still a good

19    idea.  We've got a lot that we can discuss, but we will pick

20    them and I'll give them the preliminary charge and I will send

21    them home.

22         MR. JACKS:  Judge, you, at this stage, don't plan to

23    work Saturday right now?

24         THE COURT:  I'm going to wait and see who we have

25    got and how far they are away, but I would really like not to,

1    because I want to go out and see Adobe Walls.

2         (DISCUSSION OFF THE RECORD)

3    ----------------------------------------

4         (IN OPEN COURT)

5              THE COURT:  Okay.  Lawyers and court people, please

6    check me on this.

7              Listen carefully for your name.  Mr. Fatheree,

8    Number 6; Mr. Keeler, Number 17; Mr. Tuls, Number 19;

9    Ms. Lorenz, Number 24; Ms. Morales, Number 25; Ms. Zimmerman,

10   Number 26; Mr. Huddleston, Number 28; Mr. Garrett, Number 31;

11   Mr. Ventura, Number 38; Mr. Sorrels, Number 41; Ms. Moore,

12   Number 44; Mr. Reed, Number 48; Mr. Dancy, Number 49; and

13   Ms. Yara, Number 50.  Did I get that all right, everybody?

14             MR. COGDELL:  Yes, sir.

15             THE COURT:  You are excused if I just called your

16   name.

17             Do you want me to go through them again to make

18   sure?  Let me go through them one more time, because I don't

19   want anybody to leave that I don't call their name.  Hold on,

20   sir.  Just hold on.  Fatheree, Keeler, Tuls, Lorenz, Morales,

21   Zimmerman, Huddleston, Garrett, Ventura, Sorrels, Moore, Reed,

22   Dancy, and Yara.

23             If I called your name that last time, you are free

24   to go with our thanks.

25        (THE NAMED PANEL MEMBERS EXIT THE COURTROOM)

1           THE COURT:  All right.  Now, the rest of you, I'm

2     going to--  It's 12:00.  The lawyers need a little time to

3     decide what they're going to ask of me further.  What I'm going

4     to ask you to do is--I'm going to let you go for an hour.  Go

5     have lunch or do anything you want to in the next hour.  I'll

6     ask you to be back here at 1:00, in the same row and preferably

7     in the same seat that you are in now.

8           And I'll tell you what will happen then.  I will

9     then let all but fourteen of you go, and fourteen of you will

10    stay and serve as a juror.  To those fourteen, I will then give

11    you some preliminary instructions, and then believe it or not--

12    and I promise you I'm going to save you a bunch of time by

13    taking the rest of the day off while we get ready to start

14    evidence in the morning.  It sounds like we're going to waste

15    some hours of today, but believe me, we're going to be up here,

16    and the lawyers and I will be doing everything we can to get

17    this case as short as we can and should do.

18          So there we are.  I'll ask you to please be back,

19    same row, pretty much the same seat--same seat if possible--in

20    one hour.  Yes, sir?

21          MR. HAAG:  Your Honor, we would request an

22    instruction to ask the jurors not to read any media or--

23          THE COURT:  Okay.  Please, let me--I'll do this

24    ahead of time.  I'll do it again.  Please do not read, watch,

25    listen to radio, TV, Internet, anything about this case until

1    this case is over with.  Secondly--and I'm going to go ahead

2    and say it now.  It's new.  Please do not do any independent

3    research.  Don't go on the Internet and look up any of this.

4    You know, I used to live in a little town called Monroe,

5    Louisiana, and my wife used to laugh.  She said, the gossip in

6    that town is 94 percent accurate.  The problem is the

7    6 percent.

8            Well, that's the problem with the Internet.  It's

9    probably about 90 percent accurate, but the problem is the

10   10 percent.  So please, do not do any independent research

11   whatsoever.  Okay?

12           See y'all at, now, five after 1:00.

13       (RECESS TAKEN)

14       (OUTSIDE THE PRESENCE OF THE JURY PANEL)

15           THE COURT:  Juror Number 1, Sarah Nicholson;

16   Number 2, Pamela Barrett; Number 3, Roberta Godsey; Number 4,

17   Gary Billstrom; Number 5, Debra Arroyos; Number 6, Caroll

18   White; Number 7, Thomas Simpson.  That's Number 20.  The ninth

19   one is Number 22, Scottie Brewer--excuse me, the eighth--

20   seventh is Number 20, Simpson.  Number 21, Florer, is Number 8.

21   Scottie Brewer, Number 22, is Number 9.  Sharon Weisgerber is

22   Number 10--

23           MR. COGDELL:  I'm sorry, Your Honor.  Did you say 21

24   was on the jury?

25           THE COURT:  21 is on the jury.

1                    MR. COGDELL:  All right.  Thank you.

2                    THE COURT:  Janice Brownlow is Juror Number 11.

3     She's 27 on the list.  And Matthew Smith, Number 34, is

4     Number 12.  The first alternate is Richard Combs.  Do I hear a

5     strike from the government?

6                    MS. WILLIAMS:  No, Your Honor.

7                    THE COURT:  Do I hear a strike from the defense?

8     Richard Combs, Number 37.

9                    MR. COGDELL:  No, Your Honor.  No.

10                   THE COURT:  Mr. Combs is the first alternate.

11                   The next alternate is Mr.--is Ms. Swapp.  Right?  Do

12    I hear a challenge from the government?

13                   MS. WILLIAMS:  No, Your Honor.

14                   THE COURT:  Do I hear a challenge from the defense?

15                   MR. COGDELL:  No, sir.

16                   THE COURT:  Now, I didn't--and it's my fault.  I did

17    not give Mr. Cogdell the chance to exercise any--or ask for any

18    cause, and I apologize.  Go ahead and tell me who you would

19    have asked for cause.

20                   MR. COGDELL:  Number 32, Your Honor, Ms. Kathleen

21    Marrs Norris, who stated that she had formed an opinion about

22    the guilt or innocence of Mr. Aldawsari.

23                   THE COURT:  Right.  She formed an opinion, but then

24    she said that she was--she would pay attention and follow her

25    oath, and so I denied that one.

1    What else?

2    MR. COGDELL:  Move for an additional peremptory in

3 light of the court's denial.

4    THE COURT:  Why do you get an additional peremptory?

5    MR. COGDELL:  I'm not saying I do; I'm just saying

6 I'm asking for it.

7    THE COURT:  Okay.  All right.  Okay.  So we have our

8 jury, and we have our alternates, and when they come back at

9 five after 1:00--  Y'all will need some time for lunch?

10    MR. COGDELL:  That would be nice.

11    THE COURT:  Well, how about 2:00, and if you want to

12 take off your coat and tie, that's fine with me too, when you

13 come back.

14    MR. COGDELL:  You want us to stay here until five--

15 until 1:00?

16    THE COURT:  I'm sorry?

17    MR. COGDELL:  You want us to stay here until 1:00?

18    THE COURT:  I want you to stay until I put the jury

19 in there, swear them, and give my--give a very short--about how

20 they're supposed to behave themselves.

21    MR. COGDELL:  Yes, sir.  Now, we've got our juror

22 questionnaires that we didn't make copies of and we didn't do

23 Google searches on obviously.

24    THE COURT:  Give a copy to--give it back to the

25 clerk.

1          MR. HAAG:  May I approach, Your Honor?

2          THE COURT:  Yes, sir.

3      (APPROACHES COURTROOM DEPUTY)

4          THE COURT:  See y'all at five after 1:00 and then

5  see what happens next.

6      (RECESS TAKEN)

7      (THE PANEL MEMBERS ARE PRESENT IN THE COURTROOM)

8          THE COURT:  Ms. Nicholson?

9          PANEL MEMBER:  Yes.

10          THE COURT:  Ms. Nicholson, if you will come up and

11  take that seat right there at the front row.  Ms. Barrett,

12  Ms. Godsey, Mr. Billstrom--Mr. Billstrom, yes.  Ms. Arroyos,

13  Mr. White, Mr. Simpson, Mr. Florer, Mr. Brewer, Ms. Weisgerber,

14  Ms. Brownlow, Mr. Combs, Ms. Swapp, and Mr. Grieve, come up and

15  take that seat.

16      (THE JURORS ARE SEATED IN THE JURY BOX)

17          THE COURT:  All right.  If you're still seated out

18  there, you are free to go.  Thank you very much for being here.

19  We greatly appreciate it.

20      (THE PANEL MEMBERS EXIT THE COURTROOM)

21          THE COURT:  You may all be seated.

22          If y'all want to move forward, you can now

23  certainly, anybody in that back row.

24          All right.  Ladies and gentlemen, if y'all would

25  rise now and raise your right hand and be sworn or affirmed.

1          (THE JURORS ARE SWORN)

2              THE COURT:  Be seated, please.

3              Well, ladies and gentlemen, what I say now is

4    intended kind of as an introduction to the trial of the case.

5    It's not a substitute for the more detailed instructions that

6    I'll be giving you at the close of the evidence before you

7    retire to consider your verdict.

8              As I said, this is a criminal case commenced by the

9    United States--sometimes refer to them as the prosecution or

10   the government--against the defendant.  It comes to court based

11   on an indictment by the grand jury.  The indictment is dated

12   March 9th, 2011, and it alleges that the defendant, Khalid

13   Ali-M Aldawsari, did knowingly and unlawfully attempt to use a

14   weapon of mass destruction, that is, a destructive device,

15   being an explosive bomb or similar device, against any person

16   or property within the United States, and the mail and a

17   facility of interstate commerce was used in furtherance of the

18   offense, and the offense and the results of the offense, if it

19   succeeded, would have affected interstate commerce.

20             The defendant has denied the charges against him and

21   has entered a plea of not guilty, raising issues for you to

22   try.

23             Here's how a federal criminal trial starts.  The

24   parties have an opportunity to make an opening statement.  The

25   government must and the defendant may make an opening statement

1    at the beginning of the case.  What is said in opening

2    statement is not evidence.  The statement must simply serve the

3    purpose of an introduction to the evidence which the party

4    intends to produce, kind of an outline, if you will, to assist

5    you to understand the testimony and the documents.  Then the

6    government will introduce evidence in support of the charges

7    contained in the indictment.

8            After the government has presented its evidence, the

9    defendant may present evidence, but they are not obligated to

10   do so.  The burden is always on the government to prove every

11   element of each offense charged beyond a reasonable doubt.  The

12   law never imposes on a defendant in a criminal case the burden

13   of calling any witnesses or introducing any evidence.

14           After the defendant has completed his case, saying

15   "Defense rests," the government may, under certain

16   circumstances, present rebuttal evidence.

17           At the conclusion of the evidence, each party has an

18   opportunity to present oral argument in support of its case.

19   What is said in closing, as in opening, is not evidence.

20   Arguments are designed to present to you the contentions of the

21   parties as to what they think the evidence has shown and what

22   inferences they would like for you to draw from the evidence

23   presented.  The government has the right to open and to close

24   the argument.  I will then instruct you on the applicable law

25   and will furnish you with a copy of the instructions, and then

1    you will retire to consider your verdict.  Your verdict,

2    whether guilty or not guilty, must be unanimous.

3            Your purpose as jurors is to find and determine the

4    facts.  Under our system of criminal procedure, you are the

5    sole judges of the facts.  If, at any time, I make some comment

6    regarding the facts, you are at perfect liberty to disregard

7    it.  It's important that you perform your duty of determining

8    the facts diligently and conscientiously.

9            On the other hand, and with equal emphasis, I

10   instruct you, the law as I give it to you is the only law for

11   your guidance.  It's your duty to accept it and follow it, even

12   if you disagree with it.  You are not at liberty to substitute

13   your own idea of what the law is or what the law ought to be.

14   We are a nation of laws, and one law governs us all.

15           You are here to determine the facts in the case

16   solely from the evidence presented.  That is the testimony of

17   witnesses and exhibits received in evidence.  Questions by

18   lawyers are not evidence.  Evidence is the witnesses' answers

19   to the questions and any documents allowed into evidence.

20   Statements and arguments are not evidence.  It's up to you to

21   decide what inferences are to be drawn from the evidence

22   presented and what facts have been established by the evidence.

23           From time to time, the parties may present

24   objections to some piece of evidence.  It's the duty of a

25   lawyer to object to evidence that he or she believes is not

1      properly offered, and you should not be prejudiced in any way

2      against a lawyer who makes an objection, or against the party

3      he represents.   Sometimes I may agree with the objection and

4      sustain it and direct that you disregard certain testimony or

5      exhibits.   You must not consider any evidence or testimony

6      which I've instructed you to disregard.

7              Further, you must not consider anything you may have

8      read or heard about the case outside the courtroom, whether

9      before or during trial.   During trial, it may be necessary for

10     me to confer with the lawyers from time to time outside of your

11     hearing concerning some question of law or procedure.   It will

12     require consideration by the court alone.   On some of those

13     occasions, you may be excused, as much as a convenience to you

14     as to us, while I discuss the matters with the lawyers.   We

15     will try to limit those as much as possible, but please

16     remember at all times the importance of the matter you are here

17     to determine and be patient with us even when we seem to be

18     going slowly.

19             You will be listening to the testimony of a number

20     of witnesses.   You are the sole judges of the credibility or

21     believability of each witness and the weight to be given to the

22     witness's testimony.   In considering the weight and value of

23     the testimony of any witness, take into consideration such

24     things as the appearance, attitude or behavior of the witness,

25     the interest of the witness in the outcome of the case, if any;

1    his relationship to any of the parties, his inclination to

2    speak truthfully or not, the probability or improbability of

3    the witness's statements, and all other facts and circumstances

4    in evidence.  Thus, it's up to you.  You give the testimony of

5    any witness as much weight and value as you think it deserves.

6            It's very important that you hear all of the

7    testimony presented by each witness, so if, during trial, you

8    have trouble hearing any of the lawyers or witnesses or me,

9    raise your hand, and I will know to ask the lawyer or the

10   witness to speak more clearly or more slowly, as the case may

11   be.  As I said, it's up to you, the jury, who are judges of the

12   facts, and, as such, it's important you are able to hear and

13   understand all that's being presented in evidence.

14           Tomorrow, when we come back after lunch, I don't

15   know about you, but I sometimes get sleepy after lunch.  Let me

16   tell you what I do.  I stand up.  If you get sleepy, stand up.

17   And I'll tell you something else.  Some of you may, when you

18   think, close your eyes.  Well, we don't know whether you're

19   closing your eyes because you're thinking or because you're

20   asleep, so please, don't close your eyes for very long or I'll

21   have to say, "Are you awake," and call out.  So if you close

22   your eyes, don't leave them closed for very long.

23           I'm going to ask you to wear those juror buttons at

24   all times while you're in this building.  It identifies you as

25   a juror and warns people not to stop and talk to you.  As I

1    say, we want to avoid any impropriety, or even the appearance
2    of impropriety.  During lunch breaks, you needn't remain
3    together.  Eat lunch wherever you please.  If you are
4    unfamiliar with the eating places downtown, the deputy marshal
5    will be happy to assist you.  You are not required to remain
6    together while the court is in recess.  You are allowed to go
7    and come to court and to home when we finish at the end of the
8    day.  It's not, as I said, a sequestered jury.  But it is
9    important that you obey the following instructions:

10              First, don't discuss the case, even among yourselves
11   or with anyone else, not even your nearest and dearest, during
12   the course of the trial.  It's only after you've heard all of
13   the evidence and the attorneys' summations and my instructions
14   that you retire to consider your verdict.  During trial, you
15   should try to keep an open mind and reach your verdict only
16   during your final deliberations.  And that's why I ask you,
17   please, don't discuss the case, even among yourselves, until
18   you retire for your final deliberations.  Don't let anybody
19   else talk to you about the case, and if anyone does so despite
20   you telling them not to, report that fact to me as soon as you
21   are able.

22              Next, it's a normal human tendency to talk to people
23   that you see every day.  I mean, our moms taught us to be
24   polite.  We say "Good morning" when we recognize somebody.  Not
25   while you're on the jury.  Don't talk to any of the witnesses,

1   any of the parties, any of the lawyers.  If they're not court

2   personnel, don't talk to them.  Why do I say that?  While

3   you're out in the hall, you ask one of the lawyers, "Where is a

4   good place to eat," and they tell you.  What's the harm?  The

5   harm is, somebody down the hall sees you talking and has no

6   idea what you're talking about, and he'll always wonder.  So

7   that's why I tell you not to.

8           In addition, I've told the lawyers that they're not

9   to talk to you, not to even wish you a good morning.  So don't

10  you wish them good morning and then they have got to decide who

11  they're going to make mad, you or me.  It's just not fair.

12          The case will be subject to some news coverage.  I

13  instruct you you are not to read, watch, or listen to any such

14  coverage.  You must not use the Internet services, such as

15  Google, Yahoo, to individually collect any information or do

16  any research, including about the law, or any information about

17  the lawyers or me or--just don't do any research about this

18  case whatsoever.  The parties--  After you have been

19  discharged, you can read anything you want to and do all the

20  research you want to, but until you are discharged, please

21  don't mess with the Internet about this case.  The case--your

22  decision comes from what you see and hear in this courtroom,

23  and that's it.

24          Now, I'm going to let you--  Let me ask you

25  something.  Who lives the furthest from here?

1          UNIDENTIFIED JUROR:  100 miles.

2          THE COURT:  100 miles?

3          UNIDENTIFIED JUROR:  90, about 90 miles.

4          THE COURT:  Okay.  Let me--y'all be thinking about

5     this.  I want everybody to be here at 9:00 tomorrow morning.

6     We can go on Saturday if you want to.  If you don't want to

7     commute the 100 miles, Madam Clerk, we can give them per diem

8     to stay here in town.  Right?

9          JURY CLERK:  Yes.

10         THE COURT:  So if you don't want to drive home every

11    night, check with the clerk and make arrangements for your per

12    diem.  But most of us would rather not go on Saturday, but if

13    it's--as I've told the lawyers, I'm more interested in your

14    comfort than anybody else's, including my own, so if y'all want

15    to go on Saturday, we can go on Saturday.  But otherwise, we'll

16    go tomorrow, and then we'll pick up on Monday.  But I'll ask

17    y'all about it tomorrow morning.

18         Now, Marshal, do we--the jury room is probably the

19    best place for them to meet to wait for us to start in the

20    morning; is that right?

21         COURT SECURITY OFFICER:  Yes, sir.

22         THE COURT:  If you'll show them the jury room, I'm

23    going to let them go home.  Okay?  All rise for the jury.

24     (THE JURORS EXIT THE COURTROOM)

25         THE COURT:  All right.  You may be seated.

1          Just the lawyers, we're going to take, what, 2:30?

2     2:30 okay?

3               MR. COGDELL:  Yes, sir.

4               MR. HAAG:  Yes, Your Honor.

5               THE COURT:  Now, we can let the defendant go back?

6               MR. COGDELL:  Yes, sir.

7               THE COURT:  The courtroom will be closed.  What

8     we'll be doing is some pretrial matters that are not a matter

9     of public record.  So everybody else can leave for the day, but

10    the lawyers, I'd like back here at 2:30, please.

11              MR. HAAG:  Yes, Your Honor.

12              MR. COGDELL:  Yes, Your Honor.

13              THE COURT:  Thank you.

14         (RECESS TAKEN)

15         (TRANSCRIPT OF PRETRIAL CONFERENCE PREPARED IN SEPARATE

16         VOLUME)

17                         *  *  *  *  *

18         I certify that the foregoing is a correct transcript from
      the record of proceedings in the above-entitled matter.  I
19    further certify that the transcript fees and format comply with
      those prescribed by the Court and the Judicial Conference of
20    the United States.

21

22     s/ *Mechelle Daniel*          **DATE** DECEMBER 17, 2012

23    Mechelle Daniel
      Official Court Reporter

24

25