```
 1                   UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF TEXAS
 2                        LUBBOCK DIVISION

 3
     UNITED STATES OF AMERICA      )    NO. 5:11-CR-015-C
 4                                 )
     VS.                           )    AMARILLO, TEXAS
 5                                 )
     KHALID ALI-M ALDAWSARI        )    JUNE 21, 2012
 6

 7

 8      ------------------------------------------------------

 9                      PRE-TRIAL CONFERENCE
           BEFORE THE HONORABLE DONALD E. WALTER,
10                  UNITED STATES DISTRICT JUDGE

11      ------------------------------------------------------

12

13

14

15

16

17

18

19

20

21

22

23  OFFICIAL COURT REPORTER:  MECHELLE DANIEL, 1205 TEXAS AVENUE,
    LUBBOCK, TEXAS 79401, (806) 744-7667.
24
    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT
25  PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

```
 1                    A P P E A R A N C E S

 2   FOR THE GOVERNMENT:
     UNITED STATES ATTORNEY'S OFFICE
 3   1205 TEXAS AVENUE, SUITE 700
     LUBBOCK, TEXAS 79401
 4   BY:  JEFFREY R. HAAG
          DENISE B. WILLIAMS
 5
     U.S. DEPARTMENT OF JUSTICE
 6   NATIONAL SECURITY DIVISION
     950 PENNSYLVANIA AVENUE, N.W.
 7   WASHINGTON, DC 20530
     BY:  DAVID P. CORA
 8
     UNITED STATES ATTORNEY'S OFFICE
 9   BURNETT PLAZA, SUITE 1700
     801 CHERRY STREET, UNIT 4
10   FORT WORTH, TEXAS 76102
     BY:  MATTHEW KACSMARYK
11

12   UNITED STATES ATTORNEY'S OFFICE
     1100 COMMERCE STREET, SUITE 300
13   DALLAS, TEXAS 75242
     BY:  JAMES T. JACKS
14

15   FOR THE DEFENDANT:
     COGDELL LAW FIRM LLC
16   ATTORNEYS AT LAW
     1401 McKINNEY STREET, SUITE 1625
17   HOUSTON, TEXAS 77010
     BY:  DAN COGDELL
18        DENNIS HESTER

19
     PAUL DOYLE & ASSOCIATES
20   ATTORNEYS AT LAW
     600 TRAVIS, SUITE 4700
21   HOUSTON, TEXAS 77002
     BY:  PAUL H. DOYLE
22

23
                           * * * * *
24

25
```

```
 1                    P R O C E E D I N G S
 2            (JURORS NOT PRESENT IN THE COURTROOM)
 3                THE COURT:  Okay.  The first thing I want to talk
 4   about is the motion in limine on Mr.--Mr. Kohlmann.  Am I
 5   pronouncing that correctly?
 6                MR. HAAG:  Yes, Your Honor, Mr. Kohlmann.
 7                THE COURT:  As I understand it from the motion,
 8   Mr. Kohlmann is going to talk about stuff produced by--about
 9   the materials produced by, quote, foreign terrorists; is that
10   right?
11                MR. HAAG:  Yes, Your Honor, materials produced by--
12                THE COURT:  In promotion of Jihad.  Right?
13                MR. HAAG:  Excuse me, Your Honor?
14                THE COURT:  The promotion of Jihad?
15                MR. HAAG:  Yes, Your Honor.
16                THE COURT:  And Islamic extremism?
17                MR. HAAG:  Yes, Your Honor.
18                THE COURT:  And recruiting individuals?
19                MR. HAAG:  Yes, Your Honor, and the various means by
20   which they do that.
21                THE COURT:  Okay.  How does that fit in with what I
22   said we were limiting your case-in-chief to?
23                MR. HAAG:  Yes, Your Honor, if I may.
24                THE COURT:  Please.
25                MR. HAAG:  Would you like me to approach the podium?
```

```
 1                 THE COURT:  Yeah, just--I'll hear you better.
 2                 Go ahead, sir.
 3                 MR. HAAG:  Thank you, Your Honor.
 4                 As this court noted, we have to prove two things.
 5                 THE COURT:  Three, kind of, but--
 6                 MR. HAAG:  Three, but two relate here, Your Honor.
 7                 THE COURT:  Yeah.
 8                 MR. HAAG:  An intent--the defendant's intent to use
 9   a weapon of mass destruction--
10                 THE COURT:  Uh-huh.
11                 MR. HAAG:  --and that he intended to do so against
12   persons or property of the United States.
13                 And I've set out in my response, Mr. Aldawsari's
14   writings show that he was a follower of al-Qaeda--
15                 THE COURT:  I've got no problem with that.
16                 MR. HAAG:  --and--
17                 THE COURT:  We're not talking about that.  We're
18   talking about--not Mr. Aldawsari's writings.  We're talking
19   about Mr. Kohlmann's testimony.
20                 MR. HAAG:  What Mr. Kohlmann is going to say is,
21   he's going to say that al-Qaeda moved in its strategy towards
22   this homegrown terrorism where, instead of encouraging its
23   followers to come to Afghanistan and these other foreign
24   countries to commit Jihad, that he wants the followers--we will
25   give you all the tools, we will give you all the equipment, and
```

1    we want you to attack the Western forces where you are at.
2                   Mr. Aldawsari, in his writings, proclaims,
3    announces, and confesses that he is following al-Qaeda's
4    strategy, that he is following what they are saying.  And that
5    goes directly to his intent to, number one, use a weapon of
6    mass destruction, and, two, to use it against the persons or
7    property in the United States.
8                   And if I may, Your Honor, one other thing it also--
9                   THE COURT:  I'm not sure that I understand why
10   that's not 403.  You've got all the stuff that was on his
11   computer.  That's all coming in.  They're going to talk about
12   al-Qaeda.  He does.  The jury is not--hasn't been under a rock
13   someplace.  I just don't see it.
14                  MR. HAAG:  I think the thing that's beyond the
15   jury's ken, Your Honor, is that shift in strategy.  They may be
16   aware of al-Qaeda and aware of al-Qaeda's attacks--
17                  THE COURT:  But here's my question to you, sir.
18   What difference does it make what al-Qaeda--or al-Qaeda does?
19   It's what this man intended.  And I don't see where bringing
20   this foreign terrorism evidence is anything other than 403.
21   Tell me why you think it's necessary.
22                  MR. HAAG:  I think it's necessary, Your Honor,
23   because he writes, "After watching interviews with Shaykh
24   Doctor Ayman al-Zawahiri, I became more convinced with the
25   truth and Jihad for the sake of God.  With this logic and

1   faith, I will begin Jihad from here, from hostile America."
2            And so to understand what Mr. Aldawsari's motive for
3   wanting to use a weapon of mass destruction against Americans,
4   they necessarily have to understand what is al-Qaeda's motive.
5   They have to understand what is Ayman al-Zawahiri's motive.
6            THE COURT:  Sorry, sir.  I'm going to grant that
7   motion in limine.
8            MR. HAAG:  Okay.  And so just to clarify,
9   Mr. Kohlmann can't talk about anything with al-Qaeda or--
10           THE COURT:  Right.  Or what they're planning on
11  doing in Yemen or anything like that.
12           MR. HAAG:  Okay, Your Honor.
13           THE COURT:  Now, what about Mr. Sha--Sha--
14           MR. HAAG:  Mr. Shafik?
15           THE COURT:  Yes, Mr. Shafik.  He's going to talk
16  about developments in the Mideast and the al-Qaeda identities?
17           MR. HAAG:  Your Honor, there were two videos that we
18  were going to play with Mr. Shafik we have previously
19  identified with the court, and during those two videos, he was
20  going to give a historical context to what the jurors were
21  seeing.  The court has ruled those videos out under 403, so
22  Mr. Shafik won't necessarily be talking about any of that.
23  He will be talking about some of the generic terms, such as
24  what does Jihad mean, what does Mujahideen--some of the terms
25  that the jurors might have heard but might not know the--

1                THE COURT:  He's just going to define certain terms.
2    What are those terms?  Jihad?
3                MR. HAAG:  Jihad, Your Honor.
4                THE COURT:  Uh-huh.
5                MR. HAAG:  Mujahideen.
6                THE COURT:  Mujahideen.
7                MR. HAAG:  Umma.  Umma--
8                THE COURT:  Umma?  The people?
9                MR. HAAG:  --the community of believers.
10               THE COURT:  Yeah.
11               MR. HAAG:  And off the top of my head, Your Honor, I
12   can't recall too many other that he will talk about, but I will
13   make sure that he is not--
14               THE COURT:  Mr. Cogdell, what's--I see no problem
15   with--if that's all he's doing to do is define those terms, do
16   you?
17               MR. COGDELL:  No, sir, I do not.
18               THE COURT:  Okay.  Otherwise, that's it?  He's going
19   to define terms?
20               MR. HAAG:  Yes, Your Honor.
21               THE COURT:  All right.  While--and I'll get back to
22   you on one other problem I have, but I don't want Mr. Cogdell
23   to think he's too far ahead.
24               I don't understand now why--
25               MR. COGDELL:  Don't worry, Judge.  That's not going

1   to happen.

2              MR. DOYLE:  That will never happen.

3              THE COURT:  Esposito, what's he going to do?

4              MR. COGDELL:  Actually, Mr. Hester is going to--

5              THE COURT:  What's he going to do?  Come tell me.

6              MR. HESTER:  Your Honor, I think that Mr. Esposito

7   was designated really, in large part, to rebut the testimony of

8   Mr. Kohlmann.

9              THE COURT:  That's what I guessed too.

10             MR. HESTER:  Right.  So if all these subjects that

11  Mr. Kohlmann was going to testify to--  And I guess I would ask

12  for further clarification of the court's ruling.  Is he going

13  to be allowed to testify to the origin and nature of these

14  videos--Mr. Kohlmann?

15             THE COURT:  No, I think they speak for themselves.

16             MR. HESTER:  We agree.  So--and if he can't talk

17  about terrorist and Jihadist organizations, he can't talk about

18  the origin and nature of the videos, he can't talk about

19  specific terrorist groups and leaders, I think the testimony of

20  Mr. Esposito isn't relevant either.

21             THE COURT:  I think that's true.

22             Mr. Cogdell, if the evidence comes down as the

23  government tells me it is going to come down, then I am going

24  to follow the Fifth Circuit in U.S. vs. Partida, 385 F.3d. 546

25  at 560, which says, factual impossibility is not a defense to a

1   charge of attempt.  Factual impossibility is not a defense if
2   the crime could have been committed had the attendant
3   circumstances been as the actor believed them to be.
4           MR. COGDELL:  I understand.
5           THE COURT:  So if they can prove what they have been
6   telling me they're going to prove, we're not going to get
7   there.
8           MR. COGDELL:  I'm not going to be arguing factual
9   impossibility.
10          THE COURT:  Okay.  Now, I have--I want to revisit
11  Government 33.  Have a seat.  I'm back to the government.
12          MR. JACKS:  Your Honor, may I--before we leave the
13  subject of Dr. Esposito, one of the other purported topics that
14  he was going to possibly testify about was Wahhabi Islam and
15  its effect--
16          THE COURT:  No.
17          MR. JACKS:  --on Aldawsari.  Is that--
18          THE COURT:  We're not going to do that.
19          MR. JACKS:  Okay.
20          THE COURT:  You can make an offer of proof.
21          MR. COGDELL:  Judge, I don't even think--
22          THE COURT:  Anytime you want to make an offer of
23  proof, you just tell me.
24          MR. COGDELL:  Yes, sir.  As I anticipate the way the
25  court's ruling has impacted, I don't think we'll be calling him

```
 1    at all, frankly.
 2                 THE COURT:  All right.
 3                 Okay.  Government 33.  I originally overruled the
 4    objection, and that's Aldawsari with--whoever the Number 2 guy
 5    is, gives a talk.
 6                 MR. HAAG:  Yes, Your Honor.
 7                 THE COURT:  Tell me why that needs to come in, why I
 8    should change my mind on that.
 9                 MR. HAAG:  Is that 333, Your Honor?
10                 THE COURT:  Yeah, I guess--333, yes.
11                 MR. HAAG:  I think, based on the court's ruling
12    today, Your Honor--you know, again, he talks about lament of
13    the two leaders of--dead leaders of the Islamic State of Iraq
14    and praises their contribution.  Based upon the court's earlier
15    ruling--
16                 THE COURT:  Okay.  33 is out.
17                 Now, having done all this, it is very difficult for
18    any judge to always understand that something can become
19    relevant.  So if, on any of these rulings, you think that
20    somebody has kicked open a door, I want you to come to me and
21    say, "May we approach the bench," and let's decide whether the
22    door is open or not.  Okay?  Is that too much to ask of
23    anybody?
24                 MR. COGDELL:  No, sir.
25                 MR. HAAG:  Yes, Your Honor.
```

1             THE COURT:  Well, and I guess the next thing I have
2    to say is--  I'm mainly worried about the defendant here.  Any
3    problem with any of my rulings thus far?
4             MR. COGDELL:  No, sir.
5             THE COURT:  Okay.
6             And, you, of course, do, because you think you'd
7    like to put that in, and I don't blame you, but it's--I just--I
8    don't think it's necessary.  It may become necessary.  You
9    know, in your--if you get rebuttal, this may all come back in.
10   But as of right now, we're going to stick to the four corners
11   of the indictment.
12            MR. HAAG:  Yes, Your Honor.
13            THE COURT:  Okay?
14            Now, how can I help the government?  You're going
15   first.  How can I help you?
16            MR. HAAG:  We don't have any issues, Your Honor.  I
17   think we're ready to go.  We have our witnesses ready and--
18            THE COURT:  All right. How long do you need for
19   opening?
20            MR. HAAG:  Your Honor, I've asked for 30 minutes.
21   I've timed it out, and that's about--if I could get 35 just to
22   err on the side of caution--
23            THE COURT:  I'll give you 30 to 35.
24            Now, are you going to show anything to the jury in
25   opening statement?

```
 1                MR. HAAG:  Yes, Your Honor.  I have a PowerPoint.
 2                THE COURT:  Have you cleared it with Mr. Cogdell?
 3                MR. HAAG:  I'm sorry, Your Honor?
 4                THE COURT:  Have you cleared it?
 5                MR. HAAG:  No, I have not.  I have not shown it to
 6   Mr. Cogdell.
 7                THE COURT:  Well, you need to, because-- Can y'all
 8   get together before tomorrow?
 9                MR. HAAG:  Sure.
10                MR. COGDELL:  Yes, sir.
11                MR. HAAG:  I can email it to him today, Your Honor.
12                THE COURT:  Okay.  And if he has no objection, I
13   certainly have no objection.  But I don't want the jury to see
14   something that hasn't been admitted.
15                MR. COGDELL:  We, likewise, are--intend to show a
16   PowerPoint, and I'll give it to the government.
17                THE COURT:  Okay.  Do you want 30, 35 minutes also?
18                MR. COGDELL:  Yes, sir.  I think you'll get some of
19   that back, but--
20                THE COURT:  All right.  And clear with him anything
21   that you want to show.
22                MR. COGDELL:  Yes, sir.
23                MR. HAAG:  Your Honor, I would ask for one
24   clarification on the opening.  I don't bring in all the
25   evidence, obviously, but I do quote some portions of the
```

```
 1   evidence I think will be admitted at trial from Mr. Aldawsari's
 2   writings.
 3                 THE COURT:  Problem?
 4                 MR. COGDELL:  No, sir.  I mean, I think that's
 5   proper, frankly.
 6                 THE COURT:  Okay.  I just--you know, we could go
 7   through--
 8                 MR. HAAG:  I will sanitize the al-Qaeda references
 9   from the other witnesses.  Just restrict it to Mr. Aldawsari's.
10                 THE COURT:  All right.  Anything else I can do to
11   help you?  Yes, sir.
12                 MR. CORA:  Judge, David Cora.
13                 Judge, I have a little back injury, so I'm--I'd like
14   to be able to, every now and then, you know, every hour, just
15   stand and move around.
16                 THE COURT:  Sure.  You may find me standing up here
17   and walking sometimes to stay awake, if nothing else.
18                 MR. COGDELL:  If he could just do that outside, Your
19   Honor.
20        (LAUGHTER)
21                 MR. CORA:  Thank you, sir.
22                 THE COURT:  All right. Anything else for the
23   government?
24                 MR. HAAG:  Your Honor, one thing.  We did email
25   stipulations over to the defense as far as the evidence that
```

1  we've submitted, and we've given them copies of everything as
2  far as our evidence, and so we would hopefully get some
3  stipulations on--
4             MR. COGDELL:  Let me work on that this afternoon,
5  Judge.  I think we can stipulate to most, if not all.
6             THE COURT:  Okay.  What about you, sir?  How can I
7  help you?
8             MR. COGDELL:  The only sort of lingering issue that
9  we have, there's a bit of divergence on the requested jury
10 instructions on the offense itself.  Ours includes some--a
11 little bit more--
12            THE COURT:  I looked at that.  I paid a lot more
13 attention to that question of enforceability.  I'll tell you
14 what.  I'll go--
15            MR. COGDELL:  If you could just--
16            THE COURT:  I'll go--  Well, I've got it right here.
17            MR. COGDELL:  Because I include that in my opening,
18 and I'd just like to know which definition I'm going to be
19 working off of, recognizing that the court may change its mind.
20            THE COURT:  We've got a problem with--
21            MR. COGDELL:  May Mr. Hester assist the court on
22 this?
23            THE COURT:  Okay.  I'm looking at page 9.  The
24 problem is, the government--I mean the defendant has the word--
25 defining the term "substantial"--

1            MR. COGDELL:  Yes, sir.
2            THE COURT:  --"step."
3            MR. COGDELL:  Yes, sir.
4            THE COURT:  I have no problem with giving an
5    instruction, but I'm going to use the Fifth Circuit that I just
6    quoted to you.
7            MR. COGDELL:  Okay.
8            THE COURT:  Is there an objection to that?
9            MR. COGDELL:  Do you have that cite?
10           MR. HESTER:  I have the citations for--
11           THE COURT:  It was a--"Factual impossibility is not
12   a defense if the crime could have been committed had they"--
13   Well, no, that won't work.
14           MR. COGDELL:  I have no problem with that, but that
15   doesn't define "substantial step," and that's where I'm . . .
16           THE COURT:  Well, look at--it looks--  Do you see
17   it?  Do you have it in front of you?
18           MR. HAAG:  I've got--I don't have it in front of me,
19   Your Honor, but I do know, I think the--I guess the major
20   disagreement we have is, in defense's instruction, they request
21   language to the effect of, "Liability does not attach until the
22   offense proceeded to the point that, but for interference by
23   law enforcement, it would have been completed," and they cite--
24           THE COURT:  And I'm not--I'm not there.  I'm right
25   on the case where, "The term 'substantial step' in this case

1    means the defendant went beyond mere preparation toward using a
2    weapon of mass destruction."
3              MR. HESTER:  Then it's the very next sentence, Your
4    Honor.
5              THE COURT:  "You may only find the defendant guilty
6    if you find beyond a reasonable doubt that the defendant's
7    actions proceeded to a point where, if not interrupted, he
8    would have committed the underlying crime."
9              I don't see any problem with that.  Do you see a
10   problem with that?
11             MR. HAAG:  Yes, Your Honor, I do.  That's not part
12   of the Fifth Circuit standard pattern jury instruction, and I
13   think it goes beyond any of the cases that we've seen as far as
14   Fifth Circuit.
15             MR. COGDELL:  Actually I think the cases cited at
16   the bottom of our requested jury instruction demonstrate that
17   it's--
18             THE COURT:  I'm going to give that one, probably.
19   You could safely--because I probably am.  But I don't think I'm
20   going to give anything on factual impossibility, nothing,
21   unless something comes up--
22             MR. COGDELL:  Yes, sir.
23             THE COURT:  --in the course of the trial.
24             Is there anything else?
25             MR. HAAG:  We would, at the appropriate time, object

```
 1   to that portion of the instruction, Your Honor, with regard--
 2              THE COURT:  Sure, and I'll revisit it.  But I just
 3   want--all I'm saying is, I think you're going to lose, but--
 4              MR. COGDELL:  To be clear, just so Mr. Haag knows
 5   where I'm coming from, I'm going to paraphrase that as
 6   accurately as I can in a PowerPoint for opening, so I'm going
 7   there.
 8              THE COURT:  Okay.  All right.
 9              MR. COGDELL:  If the court changes, then--
10              THE COURT:  Okay.  I don't think I'll change, but--
11              MR. COGDELL:  Yes, sir.
12              THE COURT:  What else?  Anything else?
13              MR. COGDELL:  Not from the defense side, Your Honor.
14              THE COURT:  Well, y'all get a chance to get some
15   rest.  We'll start at 9:00.  We'll take a 15-minute break at
16   sometime around 10:30, 10:45; then we'll take an hour off for
17   lunch and hopefully quit by 5:00.  And hopefully we will not go
18   on Saturday, but--
19              MR. COGDELL:  If we do, we do.  It's my preference
20   not to, just because I've got a life.
21              THE COURT:  I was kind of--  Did the two that live
22   90 miles away give any indication that they really would like
23   to stay here?
24              MR. COGDELL:  They gave a great indication they
25   weren't happy.
```

```
 1                    MR. DOYLE:  They looked like they didn't want to.
 2     Yeah, I just--body language told me they weren't excited about
 3     it.
 4                    MR. COGDELL:  I didn't--
 5                    THE COURT:  They don't want to stay here?
 6                    MR. DOYLE:  But that may be just me wanting them not
 7     to want it.
 8                    COURT SECURITY OFFICER:  One is staying.
 9                    THE COURT:  One is staying?  Is it the lady or the--
10                    COURT SECURITY OFFICER:  It's the gentleman.
11                    THE COURT:  Gentleman?
12                    MR. COGDELL:  That doesn't surprise me.
13                    THE COURT:  But mom wants to go home.
14                    MR. COGDELL:  Thank you, Your Honor.
15                    THE COURT:  Anything else?
16                    MR. HAAG:  Nothing else, Your Honor.
17                    THE COURT:  Y'all know how to reach me if you need
18     me.  You can call one of the--Melanie or Caroline and they'll
19     get ahold of me.  And I'm at the hotel.  We can meet there if
20     that comes--if it comes to that.  All right?
21                    MR. HAAG:  Yes, Your Honor.
22                    MR. COGDELL:  Thank you.
23                    THE COURT:  Thank y'all very much.  I appreciate
24     your courtesy.
25             (END OF HEARING)
```

1      I certify that the foregoing is a correct transcript from

2  the record of proceedings in the above-entitled matter.  I

3  further certify that the transcript fees and format comply with

4  those prescribed by the Court and the Judicial Conference of

5  the United States.

6

7  _s/ *Mechelle Daniel*_____**DATE**__DECEMBER 17, 2012_____

8  Mechelle Daniel
   Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25